398 So.2d 1083 (1981)
Michael Don KEYS
v.
SAMBO'S RESTAURANT, INC., et al.
No. 80-C-2618.
Supreme Court of Louisiana.
May 18, 1981.
*1084 James M. Buck, Alexandria, for plaintiff-applicant.
Gregory S. Erwin of Bolen & Erwin, Alexandria, for defendants-respondents.
BLANCHE, Justice.
Plaintiff, Michael Don Keys, instituted this suit against the defendants, Sambo's Restaurant, Inc. (Sambo's) and Terry Smith, Sambo's Alexandria assistant manager, claiming damages for unlawful restraint, false imprisonment, and personal injuries. The trial jury found in favor of the defendants and dismissed the plaintiff's suit. On appeal, the Third Circuit Court of Appeal, 389 So.2d 1360, agreed with the plaintiff that the trial court had improperly instructed the jury. However, applying the proper standards to the complete record before them, that court also concluded that the defendants' actions were justified and, therefore, they affirmed the trial court. We granted plaintiff's writ of certiorari, La., 395 So.2d 340, having doubts as to whether plaintiff committed a felony so as to justify a citizen's arrest.[1] The writ was also granted on the belief that even if plaintiff *1085 did fraudulently procure food from a restaurant without paying, he was due something for a broken ankle which he received at some time during his arrest, regardless of the legality thereof.
Though there is conflicting and contradictory testimony, the following facts are deduced from the record. On December 9, 1978, the plaintiff and his friend, John Wells, were celebrating Wells' forthcoming birthday and, during the course of the evening, consumed an unspecified amount of alcohol. At approximately midnight, they decided to stop at Sambo's for a late night supper. According to the plaintiff and Wells, Wells had agreed to pay for the meals as he had been paying for most of their evening's expenses up to that point.
Each sat at the counter and ordered a chicken dinner, with both orders being written up on the same ticket. Before their food came, Wells became sick and vomited on the counter. Feeling even worse, he left the restaurant, went outside where he was again sick, and crawled into his car where he slept until approximately 6:00 a. m.
Thereafter, one of the waitresses informed defendant Smith of Wells' absence and, after having been apprised of this information, Smith then approached the plaintiff and asked where his friend (Wells) had gone, to determine if the order should be completed. The plaintiff responded he didn't know where Wells was, but he assured Smith that he would pay for Wells' meal if he did not return. With that assurance, Smith returned to the cook stand where he was helping prepare orders.
Both chicken dinners were served, and plaintiff ate all of his. As Wells had not returned, plaintiff ate one piece of chicken off Wells' plate and put another piece in his pocket for his own consumption later.
Plaintiff went to the restroom and then returned to where he had been sitting for a sip of coffee. He then began walking out of Sambo's without paying for either meal, and without explaining to any employee why he was departing without paying. Informed by a waitress of plaintiff's actions, Smith hurriedly proceeded to the exit and caught the plaintiff after he had gotten through the first set of double doors but before he could get through the second set of doors which led outside.
Smith requested that plaintiff return inside and pay for the costs of the two meals. In compliance with this request, plaintiff returned inside Sambo's and offered to pay $5.00 for his meal, but refused to pay for Wells' meal. Smith refused the offer, contending that it was not enough to cover the expense of the two meals.
Plaintiff again attempted to leave, but Smith prevented this by holding the doors shut. Finding his way blocked by the defendant Smith, plaintiff then became extremely angry and began cursing profusely and swinging his arms until he finally hit Smith. Smith, in retaliation, grabbed plaintiff by the coat and escorted him to the men's restroom. Smith, a large man at 6'1" in height and weighing 295 pounds, placed the smaller plaintiff in the men's restroom and held the door shut until the police arrived. Smith justified his actions on the ground that the plaintiff, who reeked of alcohol and was yelling and swinging, exhibited conduct which made Smith fearful that plaintiff would endanger the other customers and Sambo's employees.
Two policemen arrived shortly thereafter and found the plaintiff in the men's restroom in a seated position and a dazed condition. Again, the plaintiff became boisterous and began cursing the officers. One of the officers, believing that plaintiff was preparing to strike one of them, struck the plaintiff in the face. Plaintiff was then bodily carried out of the restaurant, placed in the police car, and taken to the police station. Plaintiff was charged with disturbing the peace, failure to pay for a meal and resisting arrest.
Plaintiff was bailed out by his father and, early the next morning, was taken to the hospital because of his intense leg pain. Plaintiff's ankle was diagnosed as broken and it was put in a cast. Shortly thereafter, plaintiff brought this lawsuit.
*1086 The court of appeal, after a meticulous review of the evidence, made the following findings:
(1) Plaintiff committed the felony proscribed by R.S. 21:21.[2]
(2) A violation of R.S. 21:21 is a felony.[3]
(3) Plaintiff's departure from the restaurant with no explanation for his non-payment constituted prima facie evidence of intent to defraud under R.S. 21:22.[4]
(4) Plaintiff could have rebutted the prima facie evidence, but failed to do so. The court particularly noted that it was not persuaded by plaintiff's hindsight that he was going outside to look for his friend.
(5) Alternatively, even if plaintiff did not actually leave the restaurant and fraudulent intent could not be inferred, the plaintiff still had committed the crime of an attempt[5] to fraudulently procure food from a restaurant without paying for it.
(6) Finally, plaintiff's personal injuries were the result of his doomed attempt to resist a lawful arrest.
Errors assigned by the plaintiff, in essence, complain solely of the correctness of the court of appeal opinion in making the foregoing findings. Our review of the evidence as set forth hereinabove and the law applicable thereto convinces us that the court of appeal is correct. Plaintiff did, in fact, commit a felony, R.S. 21:21, which authorized a private person to make his arrest, C.Cr.P. art. 214. The defendant used only that force which was necessary to detain the plaintiff until the police arrived and which would insure the safety of the other customers and employees. Plaintiff's injury, though it was never established how or when it occurred, was the result of his own misbehavior, and defendants are not liable for it.
For the foregoing reasons, the writ issued herein is recalled, vacated and set aside and the judgment of the court of appeal is affirmed. All costs are assessed against the plaintiff.
LEMMON, J., concurs and assigns reasons.
DIXON, C. J., dissents.
WATSON, J., dissents and assigns reasons.
LEMMON, Justice, concurring.
I do not necessarily agree that the evidence established plaintiff had committed a felony by violating R.S. 21:21. However, the evidence did establish that Smith had reasonable grounds to believe plaintiff was attempting to procure food without paying *1087 for it and with intent to defraud. Smith acted reasonably when he attempted to cut off plaintiff's exit. When plaintiff became belligerent and began fighting and cursing, Smith reacted reasonably by forcefully restraining plaintiff (who was acting like an obstreperous drunk) until the police arrived.
The judgment dismissing plaintiff's suit was correct.
WATSON, Justice, dissenting.
The majority errs in finding that plaintiff committed a felony proscribed by R.S. 21:21; this conclusion is not supported by the statement of facts. Plaintiff offered to pay for his meal. This gives the lie to the idea that he "... procure[d] food without paying therefor, with intent to defraud...."
On the other hand, the agent of the restaurant committed the torts of false imprisonment and battery on the plaintiff. Have we come to the time in this country when a fast food restaurant is able to collect charges for its products by closing a customer in a restroom and breaking his leg?
I respectfully dissent.
NOTES
[1] C.Cr.P. art. 214 provides:

"A private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence."
[2] R.S. 21:21 provides in pertinent part:

"No person shall:
"(1) Obtain accommodations at any hotel, inn, boarding house or restaurant or procure food without paying therefor, with intent to defraud, except when credit is given by express agreement.
* * * * * *
"(6) Obtain accommodations, food, property or services by other than the use of a credit card from any hotel, inn, boarding house or restaurant by the use of deception knowing he is without sufficient means to pay for them.
"Whoever violates any provision of this section shall be fined not more than five hundred dollars, or imprisoned, with or without hard labor, for not more than two years, or both."
[3] R.S. 14:2(4) defines "felony" as "any crime for which an offender may be sentenced to death or imprisonment at hard labor."
[4] R.S. 21:22 provides in pertinent part:

"The failure of any person to pay the proper charges due for any food, lodging, beverages, or anything of value due to any hotel, inn, boarding house or restaurant before departing from the premises, without first personally appearing before the room clerk or other agent of the establishment before departing and protesting the amount alleged to be due, or without working out satisfactory credit arrangements for the payment thereof, is prima facie evidence of intent to defraud, within the meaning of R.S. 21:21; ..."
[5] R.S. 14:27, in pertinent part, defines "attempt" as:

"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."