706 So.2d 643 (1998)
Calvin SMITH, et al., Plaintiff-Appellee,
v.
BROOKSHIRE GROCERY CO., et al., Defendant-Appellant.
No. 30184-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1998.
*645 Richard G. Barham, Shreveport, for Defendant-Appellant.
William F. Kendig, Jr., Shreveport, for Plaintiff-Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
WILLIAMS, Judge.
Defendants, Brookshire Grocery Company ("Brookshire") and Corporal Alfred D. Carter, appeal a trial court's judgment in favor of plaintiffs, Calvin Smith and his wife, Catherine, awarding damages for injuries sustained in an altercation between plaintiffs and Cpl. Carter. For the following reasons, we affirm.

FACTS
This case arises as a result of an altercation between Corporal Alfred D. Carter, an off-duty Shreveport police officer hired by Brookshire as a security officer, and Calvin and Catherine Smith, customers at Brookshire. The incident took place at the Brookshire store located at 300 West 84th Street in Shreveport, LA.
On April 6, 1995, plaintiffs arrived at Brookshire and noticed Catherine's mother, Jesse Smith, in the parking lot. Jesse was with the plaintiff's son, DeMarcus. Calvin met their son in the parking lot and took him to the sidewalk where Catherine was standing so that they could greet each other. Afterwards, Calvin accompanied DeMarcus back across the parking lot to the car and Catherine proceeded into the store. During this time, Cpl. Carter was standing outside the store. When Catherine entered the store, Cpl. Carter followed her. The witnesses give different accounts of the events that led to the subsequent physical altercation between Cpl. Carter and Calvin Smith.
According to Catherine, Cpl. Carter remarked that she was an attractive lady and, as she bent over to retrieve one of the store's small shopping baskets, he stated that she "looked good from behind." Catherine alleges that, although she repeatedly informed Carter that she was married, he followed her to the produce department and continued to make similar inappropriate comments.
While Cpl. Carter admits that he followed Catherine into the store, he denies that he followed her into the produce department. He also denies that he made the comment "you look good from behind." Cpl. Carter testified that he merely informed her that the children could get hurt leaning out of the car window, and immediately thereafter, he returned to the front of the store where he began helping other employees bag groceries.
Calvin Smith testified that, as he entered the store, he heard Cpl. Carter comment to Catherine that she "looked good from behind." He also heard Catherine tell him that she was married. Eventually, Calvin caught up with Catherine and Cpl. Carter and stepped between the two of them in an effort to deter Cpl. Carter.
Cynthia Basco and Beverly Douglas were customers at Brookshire at the time of the incident. Basco testified that she heard Cpl. Carter comment to Catherine, "You look nice tonight. How are your kids?" She observed Cpl. Carter and the plaintiffs standing together in the produce department. She heard Calvin ask Catherine why was Cpl. Carter flirting with her and informed her that he was going to find out.
Douglas testified that she was in the produce department when she noticed Cpl. Carter talking to Catherine and saw Calvin approach them and ask why Cpl. Carter was talking to his wife. Afterwards, she saw Calvin and Catherine walking towards the front of the store. Calvin encountered the assistant manager, Charles Nu, at the manager's booth located at the front of the store and attempted to report Cpl. Carter's behavior. However, the assistant manager ignored his complaint. Douglas testified that there was no loud disturbance when Calvin attempted to speak to the manager. Shortly thereafter, she noticed an altercation between Cpl. Carter and Calvin Smith and saw Calvin being sprayed with mace. She *646 also witnessed Cpl. Carter spray Catherine and Jesse Smith with mace. Douglas testified that she never saw either woman touch Cpl. Carter or do anything to provoke him.
According to Calvin, when he reached the front of the store, he asked to see the manager, but he was informed that the manager was in another part of the store. While he was waiting for the manager to return to the front of the store, Cpl. Carter approached him and asked him if he had a problem. Calvin advised Cpl. Carter that he did not want to talk to him, he wanted to talk to the manager. Cpl. Carter informed Calvin that if he had a problem, he needed to start with him. Eventually, the assistant manager returned to the front of the store and Calvin asked the assistant manager if he could talk to him. The assistant manager walked past Calvin, ignoring his request. Cpl. Carter, using profanity, had asked Calvin several times to leave the store. Calvin continued to try to talk to the assistant manager, but to no avail. As he turned to leave the store, Cpl. Carter sprayed mace in his face. Cpl. Carter placed Calvin under arrest, handcuffed him and took him outside to the front of the store. Catherine and Jesse Smith approached Cpl. Carter and questioned him about the incident. Shortly thereafter, Cpl. Carter sprayed mace toward the two women.
Cpl. Carter testified that Calvin approached him at the front of the store and asked him something to the effect of "why are you disrespecting me in front of my wife?" According to Cpl. Carter, Calvin was out of control and he warned him several times to calm down or he would have to leave the store. When Calvin continued to be disruptive, Cpl. Carter advised him that he was under arrest. When Cpl. Carter reached for Calvin to place him in handcuffs, Calvin turned away and Cpl. Carter sprayed Calvin in the face with mace. Cpl. Carter managed to get one handcuff on Calvin and escort him outside. Calvin continued to yell and struggle as he was led outside. Once outside, Catherine and Jesse Smith approached the two men. Cpl. Carter states that he made several requests for the two women to move back and sprayed mace in their direction only after they "got up in his face" and refused to move.
Calvin, Catherine and Jesse were treated at a local hospital for injuries sustained as a result of being sprayed with mace. Calvin was charged with and convicted of remaining on the premises after being ordered to leave. Catherine was charged with interfering with an officer. Charges against Catherine were later dismissed.
Plaintiffs[1] filed suit against Brookshire Grocery Company, Nutmeg Insurance Company and Cpl. Carter for injuries sustained as a result of the incident. After a trial, the court concluded that: 1) Cpl. Carter made inappropriate comments of a sexually provocative nature to Catherine Smith; 2) Cpl. Carter caused and fueled a chain of events which, at least in part, were foreseeable; 3) due to Calvin Smith's overreacting, which substantially contributed to the tortious acts, he is assessed 49% fault and Cpl. Carter 51% fault; and 4) Cpl. Carter was at all times acting within the course and scope of his employment with Brookshire. Defendants[2] appeal alleging five assignments of error.

DISCUSSION

Assignment of Error No. 1
Defendants contend that the trial court was manifestly erroneous in finding that Cpl. Carter made offensive comments to Catherine Smith that resulted in a foreseeable chain of events which caused the plaintiffs' damages. Defendants rely on the testimony from Cpl. Carter, Catherine Smith and a store customer, Cynthia Basco, to support this assignment of error. Defendants contend that Cpl. Carter, Catherine Smith and Basco were the only persons who heard the conversation between Carter and Catherine, and Catherine was the only one who testified that Carter commented that she "looked good from behind."
*647 An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir. 1990); Broussard v. Romero, 96-973 (La.App. 3rd Cir. 2/26/97), 691 So.2d 1265. Based on this standard, the Louisiana Supreme Court has established a two-tier test for the reversal of a factfinder's determination on appellate review: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, Through Department of Transportation and Development, supra; Broussard v. Romero, supra.
The trial judge is in a better position to evaluate the credibility of witnesses and the weight of the evidence than an appellate court that does not see or hear the witness. Robinson v. Hardy, 505 So.2d 767 (La.App. 2d Cir.1987). For this reason, a reviewing court should adopt the trial court's finding as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3 Cir.), writ denied, 374 So.2d 660 (La.1979); Robinson v. Hardy, supra.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Broussard v. Romero, supra. Where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the story, a court of appeal may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination. Rosell, supra.
In the present case, Catherine testified that Cpl. Carter made inappropriate comments to her. Defendants argue that Catherine's testimony is self-serving and is the only evidence which supports the plaintiffs' contention that the comment was made. However, Calvin testified that, as he entered the store, he heard Cpl. Carter comment to Catherine that she "looked good from behind." Cynthia Basco's testimony that she never heard Cpl. Carter make this comment to Catherine is not conclusive of whether Cpl. Carter made the comment, but only establishes that Basco did not hear it. Catherine alleges that the comment was made as she retrieved a basket at the front of the store. According to Basco, she first encountered Cpl. Carter and Catherine in the produce department, some distance from the front of the store. Apparently, the trial court concluded that Basco did not hear the conversation that took place at the front of the store.
The record presents conflicting evidence regarding the exact exchange of words between Cpl. Carter and Catherine. Calvin testified that he heard the same comment when he entered the store. After an evaluation of the evidence, the trial court chose to believe Catherine's testimony concerning the statement. We cannot say that the trial court was manifestly erroneous in believing her.

Assignment of Error No. 2
In their second assignment of error, defendants contend that the statements Cpl. Carter allegedly made to Catherine were neither defamatory nor reasonably likely to result in physical retaliation.
In its ruling, the trial court did not conclude that Cpl. Carter's comments were defamatory. Instead, the court concluded that Cpl. Carter made inappropriate comments of a sexually provocative nature which caused and fueled a chain of events which, at least in part, were foreseeable.
Determining foreseeability requires a review of the factual circumstances surrounding the events. Plaintiffs arrived at the store together and, until Calvin left his wife to meet their son, they approached the entrance of the store together. Cpl. Carter admitted that he was aware that plaintiffs were together and noticed them together in the parking lot before they entered the store. *648 Cpl. Carter's comments alone may not be sufficient to provoke physical retaliation. However, when made to a woman in the presence of her husband, comments of this nature are reasonably likely to cause a confrontation of some caliber.
After reviewing the evidence, the trial court concluded that Cpl. Carter's comments were inappropriate, that Cpl. Carter had approached Calvin at the front of the store when he sought to make a complaint to the manager, and that the events that followed were, in part, foreseeable. These factual conclusions are reasonable and without error. After reviewing the entire record, we conclude that the trial court could have reasonably found that the resulting foreseeable confrontation between Carter and Smith was the cause of plaintiffs' injuries. Accordingly, we must affirm the trial court's finding of liability. This assignment of error is without merit.

Assignment of Error No. 3
Defendants argue that plaintiffs' damages did not result from Cpl. Carter's comments, instead, the injuries resulted from plaintiffs' overreaction to the comments. Defendants contend that, as opposed to making a complaint to the manager, Calvin Smith chose to confront Cpl. Carter, at which time Calvin reacted belligerently and caused a scene at the front of the store. Defendants insist that it was Calvin's conduct that caused his eviction from the store, his subsequent arrest and his injuries. Defendants argue that Cpl. Carter had no other option than to react as he did. Defendants also contend that Catherine Smith's injuries occurred because she interfered in Calvin's arrest. They allege that she was sprayed with mace only after she was warned several times to stay away from the officer while he was arresting Calvin.
As stated above, there is conflicting evidence regarding Calvin's demeanor when he returned to the front of the store to see the manager. Brookshire's employees corroborated Cpl. Carter's claim that Calvin was loud and out of control when he reached the front of the store and continued his tirade after he was warned several times by Cpl. Carter to calm down and leave the store or he would be arrested.
Calvin contends that he was calm when he attempted to see the manager. This contention is supported by the testimony of Beverly Douglas. She testified that, out of curiosity, she followed Calvin to the front of the store. According to Douglas, Calvin did not cause a loud disturbance when he attempted to see the manager. However, Calvin admits that he did not leave the store immediately after Cpl. Carter requested that he leave. Calvin testified that he continued in his attempt to speak to the manager.
Apparently, the trial court concluded that both Cpl. Carter and Calvin could have conducted themselves more appropriately. Cpl. Carter's inappropriate comments sparked the altercation, and the entire incident could have been avoided had he refrained from making those comments. On the other hand, Calvin had the option of leaving the store and reporting his complaint at a later time. It is obvious that the trial court assessed the conflicting testimony and determined that each party's conduct was a proximate cause of the physical altercation and the damages sustained by Calvin.
Considering the factual circumstances surrounding this case, the trial court was not manifestly erroneous in finding that the inappropriate use of force by Cpl. Carter and the "overreaction" of Calvin Smith each contributed to the physical encounter which led to Calvin's subsequent injuries. Therefore, we affirm the trial court's assessment of fault for Calvin's damages against both Cpl. Carter and Calvin Smith.
The trial court heard testimony concerning Mrs. Smith's actions during the arrest. The second officer who arrived at the store testified that based on her observations, Carter had acted properly in controlling the arrest scene. However, the trial court was aware of the events preceding the arrest, including the fact that the incident had been sparked by Carter's own initial misconduct. Based on the evidence in the record, the trial court could have reasonably found that Mrs. Smith was not at fault and that her injuries were caused by Carter's inappropriate use of force against her during *649 his arrest of her husband outside of the store. Therefore, the trial court did not err in awarding damages to Mrs. Smith for her injuries caused by the mace. The assigned error lacks merit.

Assignment of Error No. 4
Defendants also contend that Carter was employed as an independent contractor and therefore, the trial court erred in finding Brookshire Grocery Company liable for Carter's actions.
Generally, a principal is not liable for the offenses committed by an independent contractor while performing its contractual duties. Thomas v. Albertsons, Inc., 28,950 (La.App.2d Cir. 12/11/96), 685 So.2d 1134; Davis v. State Farm Ins. Co., 558 So.2d 636 (La.App. 1st Cir.1990). However, this rule is subject to two exceptions: 1) when the work is ultrahazardous or 2) if the principal reserves the right to supervise or control the independent contractor. Thomas v. Albertsons, supra; Davis v. State Farm, supra. It is not the supervision and control which is actually exercised that is significant, but it is the right to exercise it which is of primary concern in determining whether a principal may be liable for the torts of an independent contractor. Davis v. State Farm, supra.
At the time of the incident, Brookshire employed Cpl. Carter as an off-duty private security officer in police uniform. The record reflects that the manager on duty during the hours that Cpl. Carter worked was responsible for him. Cpl. Carter was given instructions as to where to position himself in the store, what his responsibilities were and what hours he would work. If Cpl. Carter did anything inconsistent with his job as a security officer or with the goals of Brookshire, the manager was responsible for rectifying the problem.
The responsibilities of Brookshire's managers regarding the store's security officers are consistent with the right to supervise or control. Therefore, Brookshire is liable for Cpl. Carter's actions. This assignment of error lacks merit.

Assignment of Error No. 5
Defendants argue that the trial court erred in refusing to allow them to cross-examine Calvin regarding his prior arrests. Defendants introduced into evidence police reports documenting Calvin's prior arrests to explain Calvin's motive for his aggressiveness during the altercation. Defendants contend that prior altercations with the police led to Calvin's dislike for police officers and this dislike was Calvin's motive for confronting Cpl. Carter. They argue that the central issue before the court was Calvin Smith's reason for losing control and that this issue could only be resolved by cross-examining Calvin concerning his prior arrests.
LSA-C.E. art. 404(B) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Additionally, LSA-C.E. art. 608(B) prohibits the use of evidence of specific or particular instances of conduct to attack the general credibility of a witness. Moreover, Calvin Smith's prior criminal history, which did not involve this officer, was not relevant during this bench trial to a determination of whether Cpl. Carter's conduct was a cause-in-fact of plaintiff's injuries. We find no abuse of discretion here. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment in favor of plaintiffs, Calvin and Catherine Smith, is affirmed. Costs of this appeal are assessed to the defendants, Brookshire Grocery Company and Corporal Alfred D. Carter.
AFFIRMED.
CARAWAY, J., concurs with written reasons.
CARAWAY, Judge, concurring.
While I agree with the result and much of the analysis of the majority, I add this concurrence to dispel any suggestion that a verbal assault occurred to Mr. and Mrs. Smith by the sexually offensive comments of Carter. Words may amount to an assault only *650 when they rise to the level of a threat coupled with the present ability to carry out the threat. In such case, the victim is placed in reasonable apprehension of receiving an injury. Martin v. Bigner, 27,694 (La.App.2d Cir. 12/6/95), 665 So.2d 709. Carter's offensive language and actions toward Mrs. Smith did not amount to an assault. The fact that this occurred in Mr. Smith's presence does not create a special tort remedy for husbands, just as mere words, even though designed to irritate or provoke, do not justify a battery. Eddy v. Litton, 586 So.2d 670 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La. 1992).
The starting point of any actionable offense in this case must be the confrontation between Carter and Mr. Smith and the arrest. From my review of the jurisprudence involving somewhat similar factual settings in civil or criminal actions for false imprisonment[1], unlawful restraint (or battery by a police officer), or the crimes of disturbing the peace (La. R.S. 14:103) and resisting arrest (La. R.S. 14:108), the judgment holding Carter 51% responsible for this needless encounter between the two men can be upheld as a false imprisonment and battery of Mr. Smith, whose "overreaction," as found by the trial court, came arguably close to resisting arrest. See, Keys v. Sambo's Restaurant, Inc., 398 So.2d 1083 (La.1981); Borne v. Brown, 492 So.2d 6 (La.App. 1st Cir.1986); Tabora v. City of Kenner, 94,613 (La.App. 5th Cir. 1/18/95), 650 So.2d 319; State v. Bissett, 451 So.2d 181 (La.App. 1st Cir.1984); and State in the Interest of W.B., 461 So.2d 366 (La. App. 2d Cir.1984).
Mrs. Smith's claim must also be one of false imprisonment and battery relating to Carter's actions against her outside the store as she attempted to oppose Carter's arrest of her husband. What appeared to the second officer arriving at the scene to be proper conduct by Carter in controlling the scene of a lawful arrest was understood by the trial court in the context of Carter's overreaction to an embarrassing situation of his own making. With this clarification regarding Carter's tortuous conduct in handling the "arrests" of Mr. and Mrs. Smith, and not his prior inappropriate language, I respectfully concur.
NOTES
[1] Jesse Smith died shortly after the incident and her suit against defendants was dismissed.
[2] Nutmeg Insurance Co. was named as a defendant in the trial court's "Reasons for Judgment." However, the insurer was not named as a defendant in the final judgment.
[1] The tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. If a person is arrested pursuant to statutory authority, there is no liability for damages for false imprisonment. O'Conner v. Hammond Police Department, 439 So.2d 558 (La.App. 1st Cir.1983).