710 So.2d 1132 (1998)
Keith Bryan BABB, Plaintiff-Appellant,
v.
Travis BONEY, et al., Defendant-Appellee.
No. 30443-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
Rehearing Denied May 6, 1998.
*1133 Johnny E. Dollar, Monroe, and Nicolas Anderson, for Plaintiff-Appellant.
Geary S. Aycock, West Monroe, for Defendant-Appellee Travis Boney.
John Hoychick, Jr., Rayville, and Thomas Allen, Monroe, for Darren Oglesby.
Walter Dunn, for Allstate Insurance Co.
Before HIGHTOWER, WILLIAMS and CARAWAY, JJ.
CARAWAY, Judge.
Brian Babb sustained a broken nose, broken jaw and injuries to his face when he was struck by the defendant, Travis Boney, during a brawl outside a bar. After a jury verdict reduced Boney's responsibility for his intentional actions by 65% due to the negligent involvement in the brawl by Babb and others, Babb appeals the assessment of fault. Babb further complains of the low award of general damages determined by the jury. Finding error in both the assessment of fault and the award of general damages, we amend the judgment in part.

Facts
Brian Babb and some friends, including Jim Stone and Matt Williams, went to Sal's Saloon in Monroe around midnight on June 14, 1992. When Babb and Stone walked out of Sal's to go home, they encountered another group that included Travis Boney, Mark Phillips, and Darren Olgesby. There apparently were some ill feelings harbored by Oglesby regarding his former membership in a fraternity at Northeast Louisiana University to which Babb now belonged. To avoid trouble, Babb walked back into the bar after Oglesby made provocative remarks (which he denies) to Babb about his membership in the fraternity and his personal appearance. Stone remained outside the bar. About the same time, Matt Williams saw that trouble was brewing and yelled at the group that included Oglesby. This prompted Oglesby to run down Williams, who was walking to his car with his girlfriend. A shoving match ensued which quickly erupted into a brawl involving several people.
Babb came back out of the saloon and saw that his friends were involved in the fight with Boney, Oglesby and others. Testimony supports his allegation that he was attempting to pull his friend Jim Stone off the pavement to safety, when he was hit or kicked in the face by Boney and rendered unconscious. Boney denies that he kicked Babb, but attributes the damage to several blows from his fists. The blows crushed Babb's nose and jaw. He was hospitalized for eight days. In addition to surgery to repair his jaw, he also underwent two re-constructive surgeries to repair his nose.
Babb filed suit against Boney, Oglesby and Phillips for battering him. The suit against Phillips was subsequently dismissed. Oglesby filed third party demands against his homeowner's insurer, Allstate Insurance Company, and Jim Stone and Matt Williams.
Trial was held in March of 1997. At the end of the plaintiff's case, Oglesby moved for and was granted a directed verdict. The trial court found that there was simply no evidence that Oglesby hit or conspired to hit Babb and that even if the jury could find that Oglesby started the fight with others that eventually resulted in Babb's injuries, he breached no duty to Babb. In order to avoid confusion, however, the court instructed Oglesby to remain in the case, and the jury interrogatories were not altered to reflect Oglesby's dismissal from the case. At the conclusion of trial, the jury found that, although Babb was not a willing participant in the altercation, he was negligent and was assessed 20% fault for his injuries. The jury found that Boney had intentionally struck Babb and assessed him with 35% fault. The jury found in the special interrogatories that Oglesby neither struck Babb nor conspired with Boney to batter Babb. Nevertheless, Oglesby was assessed with 20% fault for negligently causing Babb's injuries. The remaining 25% fault was assessed against Jim Stone and Matt Williams at 12 ½ % each for their negligent involvement in the fight.
The jury awarded Babb $26,000 in special damages to cover his proven medicals and *1134 $10,000 for general damages. Babb appeals, contesting the allocation of fault to himself and the dismissal of Oglesby by the trial court's directed verdict. Babb also asserts that the damage award of $10,000 is abusively low.

Discussion

Comparative Fault  Intentional Torts and Victim Negligence
We will first focus on plaintiff's assignment of error pertaining to the assessment of fault on Boney, the only defendant who was found to have actually battered the plaintiff. Plaintiff contends that the trial court erred in applying the principles of comparative fault in an intentional tort setting by allowing the jury to find that plaintiff was 20% at fault arising from his own negligent conduct.
In support of this contention, the plaintiff cites La. Civil Code Article 2323(C), which states:
Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
This provision of Article 2323, however, was added in 1996 by Act 3 in the Extraordinary Session some four years after the cause of action arose in this instance. Boney disputes the retroactive application of this provision of Act 3. We note that commentary has indicated that the addition of paragraph C merely codifies the prevailing case law. See Crawford, William E., Commentary: The Revision of Tort Law by the Extraordinary Session of 1996. LSA Civil Procedure, Pleadings and Judicial Forms 101 -800, Vol. 10, supplement p. 3 (West 1998), citing Veazey v. Elmwood Plantation Associates Limited, 650 So.2d 712 (La.1994)[1] and Green v. USAA Cas. Ins. Co., 668 So.2d 397 (La.App. 4th Cir.1996); F. Stone, 12 La.Civil Law Treatise: Tort Doctrine, Section 55.5 (West 1998 Supplement). We also note that in Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97), 694 So.2d 180, the Supreme Court held that another portion of Act 3 that requires the fact finder to quantify employer fault or any other third party fault is a procedural provision and therefore applies retroactively.
Regardless of the implication of Keith, supra, and Boney's arguments to the contrary that retroactive application is inappropriate, from our review of the jurisprudence and the evidence of this case, we hold that even under the pre-amendment law the plaintiffvictim's negligence should not be compared to the defendant's fault arising from an intentional battery.
Prior rulings of this circuit have recognized that there may be certain conduct which, while not justifying the battery complained of, may be of such a nature under the circumstances to have provoked or contributed to the incident. See Thigpen v. Stern, 503 So.2d 1050 (La.App. 2d Cir.1987); Walpole v. Weathersby, 465 So.2d 950 (La.App. 2d Cir. 1985); Downey v. Clark, 426 So.2d 331 (La. App. 2d Cir.1983). In these cases we held that the plaintiff's damages should be "mitigated" or reduced. Also, in Robinson v. Hardy, 505 So.2d 767 (La.App. 2d Cir.1987), writ denied 508 So.2d 825 (La.1987) and in our earlier ruling in Harris v. Pineset, 499 So.2d 499, (La.App. 2d Cir.1986), writs denied 502 So.2d 114 and 117 (La.1987), we applied the comparative fault guidelines established by the Supreme Court in Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985) to reach the same result as our earlier "mitigation" jurisprudence, i.e., a reduction of the damages recoverable by a battery victim where the victim's behavior provoked the attack.
In contrast to the cases cited above, in Bradford v. Pias, 525 So.2d 134 (La.App. 3d Cir.1988), the third circuit declined to apply comparative fault in a battery case where the defendant hit the plaintiff with his fist in the parking lot outside a nightclub. One and one-half hours earlier in the evening, the *1135 plaintiff had made a pass at the defendant's girlfriend, but he complied when the defendant asked him to leave. The appellate court held that, under those circumstances, it was against the law and the evidence for the trial judge to instruct the jury on the plaintiff's contributory negligence. See also, Hebert v. First Guaranty Bank, 493 So.2d 150 (La. App. 1st Cir.1986).
In Hattori v. Peairs, 95-0144 (La.App. 1st Cir. 10/6/95), 662 So.2d 509, Rodney Peairs shot and killed Yoshi Hattori, a Japanese foreign exchange student, who, along with his friend, Webb Haymaker, of his host family, mistakenly went to Peairs' house in costume for a Halloween party. When the defendant confronted Hattori with a gun telling him to "freeze," an idiom which the victim did not understand, Hattori continued walking toward the defendant and was shot. Peairs thus argued that Hattori was at fault. The First Circuit Court of Appeal noted that in all of the battery cases cited by defendant, including Harris v. Pineset, supra, the holdings of victim fault only involved cases where the victims provoked the incident in which they were injured. Distinguishing the facts of those cases from the general rule that contributory or comparative negligence is not a defense to an intentional tort, the Hattori court concluded that it would be poor public policy to compare fault in that situation. Id. at 517.
We find that the facts in the instant case are more closely analogous to those in Hattori, supra and Bradford, supra. The prior cases from this circuit using a comparative fault analysis in a battery case where there was provocation on the part of the victim may be viewed as a comparison of the intentional conduct on the part of both parties, but that is not the case presented here. In this instance, there was no provocation on the part of Babb, the victim. Indeed, the evidence overwhelmingly supports the view that Babb was simply trying to help his friend to safety when he was attacked by Boney.
We conclude therefore, that it was contrary to the law and the evidence for Babb's recovery vis-a-vis the intentional tortfeasor to be reduced by any negligence which might be attributed to Babb's actions in this case. Accordingly, as a matter of law, we increase the allocation of fault assigned to Boney to 55%.[2]

The Directed Verdict in Favor of Oglesby
At the close of plaintiff's case, Oglesby moved for and was granted a directed verdict. The trial judge, concerned over jury confusion, did not openly dismiss Oglesby from the case and had the trial continue as though Oglesby was still in the case. The trial court also did not change the jury's special verdict forms which posed three separate interrogatories regarding whether Oglesby hit the plaintiff, whether Oglesby conspired with Boney to hit the plaintiff, or whether Oglesby was negligent. The jury found that Oglesby was negligent and allocated 20% of the fault for plaintiff's injuries to him.
Babb now appeals the directed verdict arguing that the jury's finding of negligence proves that the directed verdict was improvidently granted. For the following reasons, we disagree and affirm the directed verdict.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Brown v. Hudson, 96 2087 (La.App. 1st Cir. 9/19/97), 700 So.2d 932; Busby v. St. Paul Insurance Company, 95-2128 (La.App. 1st Cir. 5/10/96), 673 So.2d 320, writ denied, 96-1519 (La.9/20/96), 679 So.2d 443.
There is no evidence in the record that Oglesby hit Babb. Nor do we find evidence of a conspiracy under La. C.C. art. 2324.[3] The *1136 jurisprudence interpreting that article clearly requires an agreement (a meeting of the minds) or collusion between the parties for the purpose of committing wrongdoing. Stephens v. Bail Enforcement of Louisiana, 96-0809 (La.App. 1st Cir.1997), 690 So.2d 124, writ denied 692 So.2d 454 (La.1997). The record is devoid of evidence of such collusion or meeting of the minds to harm Babb.
The question of Oglesby's negligence, of which there were never any facts pleaded in Babb's petition, was never clearly placed at issue in the suit. On the eve of the trial, a motion in limine filed by Allstate regarding the presentation of evidence based upon this theory of Oglesby's negligence and was questionably denied by the trial court. Nevertheless, it concluded at the close of the plaintiff's case that there was no evidence presented by the plaintiff that indicated that Oglesby breached a duty owed to the plaintiff. We agree.
The fact that Oglesby got into an altercation with Babb's friend, Matt Williams, as a part of the all out brawl between the two camps, simply does not tend to show that Oglesby breached a duty to Babb that caused his injuries. For these reasons, then, we affirm the judgment granting the directed verdict to Oglesby.

The Jury's General Damage Award
The jury awarded general damages of $10,000. The plaintiff contends that this amount is abusively low considering the extent of his injuries and his pain, suffering and embarrassment. Plaintiff suggests that the award be raised to $75,000.
In Carter v. Brookshire Grocery Co., 29,166 (La.App. 2d Cir. 2/26/97), 690 So.2d 933, writ denied 693 So.2d 734 (La.1997), we discussed appellate review of awards of general damages, specifically quoting the following passage from Sledge v. Continental Casualty Co., 25,770 (La.App.2d Cir. 6/24/94), 639 So.2d 805, wherein we stated:
In assessing damages in cases of offenses, quasi-offenses, and quasi-contracts, much discretion must be left to the judge or jury. LSA-C.C. Art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Reck v. Stevens, 373 So.2d 498 (La.1979); Brimer v. Copeland, 604 So.2d 1388 (La.App. 2d Cir.1992). In determining whether the trier of fact abused discretion by making an excessive award, the evidence must be viewed in the light most favorable to the plaintiff, whereas an inadequate award is viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). Of course, upon finding an award is, in either direction, beyond that which a reasonable trier of fact could assess, the reviewing court may lower (or increase) an award of general damages to the highest (or lowest) amount that could appropriately be granted. Youn, supra; Brimer, supra. However, it is only after an articulated factual analysis discloses such abuse that guidance from prior awards becomes relevant. Youn, supra; Reck, supra; Thomas v. Petrolane Gas Service, Ltd., 588 So.2d 711 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1201 (La.1992).
The blows delivered by Boney badly damaged Babb's nose, which had to be reconstructed in two surgeries. He was hospitalized for eight days. Additionally, for a period of approximately one month, Babb's nose had to be suctioned to remove blood and other material blocking the air passage. This caused extreme pain and discomfort. Complicating the matter and increasing the discomfort, Babb's jaw was broken, and its repair required that his mouth be held shut, initially by bars and later by elastic bands, for 6 weeks. He lost 16 pounds because he could not eat solid food. Babb stated he was also embarrassed because he had to wear devices in his nose to aid in breathing that were visible and drew attention to his nose and the fact that he had been severely beaten in a fight.
Dr. Wren Cohenour, an expert in oral surgery who treated Babb's broken jaw, testified to what he saw in the emergency room *1137 of North Monroe Hospital and his subsequent treatment of Babb. He stated that Babb had a fractured right jaw in the area of the wisdom tooth. His mouth was bleeding and he had some bruises on his face and his elbow was scraped. Babb could not close his mouth correctly, and he was in pain. He said he also had nose trauma and was referred to Dr. Larry Danna. After consultation with Dr. Danna, the jaw surgery was performed first and then the first surgery on the nose. Dr. Cohenour also found a second fracture in the left front jaw in the area of the left cuspid or eye tooth. Dr. Cohenour noted Babb's nose was so packed and swollen that he had to wait a week before he could attach elastic devices to the teeth to hold the jaw. To do so earlier would have created too much difficulty for Babb to breathe. As a result of the incident, Babb now has a creaking or clicking in his jaw when he opens his mouth called TMJ dysfunction.
Dr. Danna testified by video deposition, stating that he saw Babb in the emergency room at Dr. Cohenour's request. He said that Babb had a broken jaw and a crushed face, with a comminuted nasal fracture and a displaced nasal cartilage, nasal pyramid, and depressed nasal bone. His nose was crushed completely cutting off the airway. In the initial operation, he had to put splints in his nose to maintain the airway, which he said is not unusual but indicative of a severe injury.
Based on our review of the foregoing facts in evidence, we hold that the jury abused its great discretion in awarding the plaintiff merely $10,000 for general damages. This plaintiff sustained brutal damages and endured considerable pain and discomfort at the hands of the defendant. We turn now to our state's prior jurisprudence to review previous awards in factually similar cases.
Our review of the state's jurisprudence reveals no cases in which a battery victim sustained both a broken nose and a broken jaw in two places. There are, however, several cases in which the victim of a battery suffered either a broken nose or a broken jaw. Additionally, we have reviewed cases where similar jaw and nose injuries have resulted from an accident.
In Bradford v. Pias, supra, the third circuit affirmed the trial court's grant of a JNOV increasing the jury's damage award from $5,000 to $25,000. The plaintiff suffered a broken nose, two linear skull fractures, one basilar skull fracture and a concussion.
Some 10 years ago, we held in Winstead v. Watson, 528 So.2d 691 (La.App. 2d Cir.1988) that a damage award for $5,000 was abusively low and the lowest amount that the trial court could reasonably have awarded was $10,000 where the plaintiff suffered a fractured jaw in two places and a broken tooth as well as some lacerations in his mouth as a result of the defendant striking him.
General damage awards for similar injuries outside the context of a battery have been significantly greater. E.g., see Dubois v. State Farm Ins. Co., 571 So.2d 201 (La. App. 3d Cir.1990), writ denied, 575 So.2d 367 (La.1991), where the court of appeal affirmed a jury award of $100,000 general damages for young woman's broken nose, sprains, bruises and soft-tissue injuries sustained in an automobile accident. The court noted that, as in the instant case, the victim had to undergo two surgeries to repair the nose. See also, Rhodes v. State, Through DOTD, 684 So.2d 1134 (La.App. 1st Cir.1996) (General damage award of $100,000 for 17-year old accident victim who suffered a broken jaw and superficial lacerations to face and head. The court noted the six week period of semi-solid diet and her mouth wired shut.)
In contrast to the cases reviewed above, Babb suffered a broken nose and two fractures to the jaw, one of which was an open fracture. A total of three surgeries were required with the plaintiff twice placed under general anesthesia. The plaintiff also suffered other minor cuts and bruises. The recovery period for the plaintiff was extended and very painful. Bearing these facts in mind, we conclude that the very lowest a reasonable jury could award for the plaintiff's general damages is $20,000.
Therefore, for the reasons stated hereinabove, we affirm the judgment against Travis Boney and in favor of Brian Babb, but amend the judgment to reallocate Boney with 55% fault. The judgment is further amended to *1138 increase the award of general damages to $20,000. In all other respects, the judgment is affirmed, including the dismissal of defendant, Darren Oglesby. Costs of appeal are assessed to Travis Boney.
AMENDED AND, AS AMENDED, AFFIRMED.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, WILLIAMS, STEWART and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] Actually, the Veazey court declined to "express any opinion ... as to whether, or in what situations, if any, victim fault should be compared to the fault of an intentional tortfeasor." Veazey, supra at 719, n. 10.
[2] Although the erroneous 20% assessment of fault on the victim for negligence arguably compares to the similar 45% composite assessment by the jury to Oglesby, Stone and Williams for their negligent involvement in the fray, plaintiff does not assign as error or argue that Boney's fault should not be reduced by the 45% negligence of Oglesby, Stone and Williams.
[3] La. C.C. art. 2324(A) states: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."