737 So.2d 208 (1999)
Norman David ELROD, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., et al., Defendants-Appellants.
No. 31852-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1999.
*209 Vicki C. Warner, Shreveport, Counsel for Appellants Wal-Mart Stores and Rodney Pagans.
Bruce B. McKeithen, Monroe, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
Wal-Mart Stores, Inc., ("Wal-Mart"), appeals a judgment awarding damages in the amount of $3,500 to Norman David Elrod ("Elrod") for his claim of false imprisonment. Finding no error in the trial court's judgment, we affirm.

FACTS
On December 24, 1995, Elrod went to the Wal-Mart Supercenter in West Monroe, Louisiana, to purchase a high chair and a microwave oven before joining his family for a Christmas Eve dinner. While selecting a microwave oven, Elrod was approached by Rodney Pagans ("Pagans"), a support manager in the Wal-Mart store. Pagans began to question Elrod about his suspected involvement in harassing a female sales associate. Crystal Reppond ("Reppond"), the sales associate, reported to Pagans that a man wearing a postal cap and jacket was following her around the store and making threatening and harassing *210 comments. Elrod, a 25-year employee of the United States Postal Service, was wearing a postal cap and leather jacket.
The exchange between Pagans and Elrod began sometime between 3:45 p.m. and 4:00 p.m. Although the exchange began cordially, it soon escalated. Elrod denied any knowledge of the incident involving Reppond and became increasingly upset and defensive to the point of using obscene language. Mike Harrison, another Wal-Mart manager, joined Pagans and Elrod. When Elrod attempted to walk to the front of the store, he heard someone comment that he would "never make it past the front door." Elrod then turned and shoved his shopping cart, hitting Pagans' backside. The assistant manager, Greg Lada ("Lada"), then stopped Elrod, who was again on his way to the front of the store, and asked him to go to the back of the store so that they could clear things up. Elrod agreed.
Elrod was taken to the back of the store and held in the "training" or personnel room. One or two male employees were stationed in front of the door to the room. Rather than making an effort to clear things up, Lada spoke briefly with Elrod and obtained a copy of his drivers' license, which Elrod relinquished reluctantly. At some point, the Wal-Mart managers called the police. While Elrod remained in the room, Reppond confirmed that he was not the man who harassed her. Elrod remained in the room until approximately 5:00 p.m., when he was arrested by Officer Jackie Gilbert of the West Monroe Police Department and charged with simple battery for shoving the shopping cart at Pagans. Elrod was handcuffed and led through the store. He remained in jail until his wife, Diane Elrod, posted bond at 8:00 p.m. that evening. Elrod entered a plea of nolo contendre to the charge of simple battery and paid a fine and court costs.
On February 16, 1996, Elrod filed suit against Wal-Mart and Pagans alleging that he was falsely accused, falsely imprisoned, and wrongfully detained and arrested. Elrod later amended his petition to name Crystal Reppond as a defendant. Elrod alleged that Reppond's false accusations against him led to the events that transpired. At the close of trial, the trial court dismissed Reppond from the suit upon finding that she never accused Elrod of harassing her. However, the trial court did find that Elrod was wrongfully detained and awarded him damages in the amount of $3,500. The trial court explained that even if Elrod did commit a battery, Wal-Mart did not have authority to detain him. The trial court pointed to Elrod's testimony that two male employees were placed at the door to the room in which he was held as evidence that a wrongful detention occurred.
Wal-Mart now appeals this adverse judgment.

FALSE IMPRISONMENT
Wal-Mart argues that the trial court erred in finding that Elrod was wrongfully detained. Wal-Mart asserts that implicit in the trial court's ruling is a finding that Pagans and Wal-Mart caused Elrod to be restrained against his will and arrested without statutory authority. Wal-Mart also asserts that the record supports a finding that Elrod committed an aggravated battery when he shoved the "loaded" shopping cart at Pagans. Therefore, according to Wal-Mart, the commission of an aggravated battery supports finding that the detainment was actually a citizen's arrest.
A private person may arrest a person who commits a felony. La.C.Cr.P. art. 214. An aggravated battery is a battery (the intentional use of force or violence upon the person of another) committed with a dangerous weapon. La. R.S. 14:33 and La. R.S. 14:34. "Dangerous weapon" is defined as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to *211 produce death or great bodily harm." La. R.S. 14:2(3).
None of Wal-Mart's witnesses testified that they made a citizen's arrest of Elrod. Rather, their testimony tended to suggest that they did not even detain Elrod, but that he went to the back of the store and remained there voluntarily until the police arrived. Nothing in the record suggests that Elrod committed an aggravated battery when he shoved the shopping cart "loaded" with a microwave oven and a high chair. Nothing in the record even remotely suggests that Elrod shoved the cart in a manner calculated or likely to produce death or great bodily harm.
Wal-Mart relies upon the testimony of Officer Gilbert, the arresting officer, who testified that he could have charged Elrod with aggravated battery rather than simple battery. However, there is no basis for Officer Gilbert's testimony other than the fact that the battery was committed with the use of an instrumentality, namely, the shopping cart. Elrod was charged with simple battery and entered a plea of nolo contendre to that charge. Because there is nothing in the record to support the claim that Elrod committed an aggravated battery, any detainment that occurred cannot be considered a citizen's arrest.
The trial court's findings of fact may not be set aside on appeal in the absence of manifest error or unless clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Smith v. Brookshire Grocery Co., 30,184 (La.App. 2nd Cir. 1/23/98), 706 So.2d 643. Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable factual basis exists for the trial court's finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, supra; Smith v. Brookshire Grocery Co., supra. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court found that Wal-Mart wrongfully detained Elrod. This finding constitutes a finding that Elrod was falsely imprisoned. False imprisonment occurs when one arrests and restrains another against his will and without a warrant or other statutory authority. Anderson v. Wal-Mart Stores, Inc., 95-1026 (La.App. 5th Cir. 5/15/96), 675 So.2d 1184. Thus, the tort of false imprisonment has the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention. Anderson v. Wal-Mart Stores, Inc., supra; Tabora v. City of Kenner, 94-613 (La.App. 5th Cir. 1/18/95), 650 So.2d 319, writ denied, 95-0402 (La.3/30/95), 651 So.2d 843; Borne v. Brown, 492 So.2d 6 (La.App. 1st Cir.1986), writ denied, 496 So.2d 355 (La.1986).
The record establishes that Elrod was confronted by Pagans because he matched the bare-bones description of the harassing shopper as reported by Reppond at the time of the incident. Pagans testimony that he did not accuse Elrod of harassing Reppond but was merely trying to make Elrod aware of the need to find the individual is disingenuous. The record indicates that even after Elrod denied knowledge of the incident, Pagans continued to question Elrod, thus preventing him from leaving. This resulted in an escalation of the confrontation and the battery incident. When Elrod began walking to the front of the store after shoving the shopping cart at Pagans, Elrod was met by Lada who requested that Elrod accompany him to the back of the store so that they could get things cleared up. Elrod agreed and was escorted to the back of the store surrounded by Pagans, Lada, and Harrison.
Although Elrod apparently agreed to go to the back of the store to clear up the matter, he was actually placed in the *212 "training" or personnel room where he remained for at least 30 minutes. One or two male employees were stationed at the door to the training room. The trial court did not find Lada's explanation that male employees were stationed at the door to keep people out rather than to keep Elrod in convincing, and neither do we. Elrod testified that he did not ask to leave; however, he also testified that he did not believe that he was free to leave due to the presence of the employees at the door. While Elrod remained in the room, Reppond confirmed that he was not the man who had harassed her. Elrod did not leave the room until approximately 5:00 p.m., when Officer Gilbert arrived and arrested him for simple battery.
Even though Elrod agreed to go to the back of the store, there is no indication in the record that he agreed to be held in a room for at least thirty minutes with employees stationed as guards at the door while Wal-Mart's managers decided his fate. See and compare Anderson v. Wal-Mart, supra, in which the court concluded that the plaintiff knew that she was free to leave at any time on the basis of testimony that she did not leave the store because she did not want to be accused of stealing. In the instant case, Elrod's prior attempts to leave the store were thwarted, and nothing in the record suggests that he was free to leave once taken to the back of the store and placed in the training room.
The record supports the trial court's finding that Elrod was detained. There was no legal basis or authority for Elrod's detainment. The battery committed by Elrod does not justify Wal-Mart's actions as a citizen's arrest, and no other legal authority justifies Wal-Mart's detainment and false imprisonment of Elrod.
Upon our review of the record, we find no manifest error in the trial court's determination that Wal-Mart falsely imprisoned or wrongfully detained Elrod.

DAMAGES
Wal-Mart first argues that the damages awarded to Elrod should be reduced by attributing a percentage of the fault to Elrod, whose overreaction and battery of Pagans resulted in the detention. Wal-Mart relies upon jurisprudence recognizing that damages recoverable by a battery victim may be reduced where the victim's behavior was of such a nature as to have provoked or contributed to the attack. Babb v. Boney, 30,443 (La.App. 2nd Cir. 4/8/98), 710 So.2d 1132; Thigpen v. Stern, 503 So.2d 1050 (La.App. 2nd Cir. 1987), writ denied, 506 So.2d 113 (La.1987) and 508 So.2d 61 (La.1987); Walpole v. Weathersby, 465 So.2d 950 (La.App. 2nd Cir.1985).
Even considering that Elrod may have overreacted during the confrontation with Pagans, Elrod's actions do not warrant a reduction in damages because there was no basis for Wal-Mart's detention of Elrod, which occurred after the confrontation with Pagans and after Elrod headed to the front of the store. No detainment was necessary or warranted at that point. The Wal-Mart managers could have simply called the police or followed Elrod to his vehicle to obtain the license number for identification. Instead, they chose to detain Elrod without any legal authority. Under these circumstances, we find no basis for attributing a percentage of fault to Elrod for the purpose of reducing the damages awarded.
Wal-Mart also argues that the award of general damages in the amount of $3,500 is excessive. Wal-Mart asserts that the record is sparse with regard to damages.
The trial court is granted much discretion in assessing damages. La. C.C. art. 2324.1. Before an award of damages may be disturbed on appeal, the record must clearly reveal a clear abuse of the trial court's discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Babb v. Boney, supra; Jones v. Wal-Mart *213 Stores, Inc., 614 So.2d 1271 (La.App. 2nd Cir.1993). In determining whether the trial court abused its discretion by making an excessive award, the evidence must be viewed in the light most favorable to the plaintiff. Babb v. Boney, supra; Jones v. Wal-Mart Stores, Inc., supra; Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2nd Cir. 1987). Guidance from prior awards does not become relevant until only after an articulated factual analysis discloses an abuse of discretion. Youn v. Maritime Overseas Corp, supra; Babb v. Boney, supra.
Elrod was detained in a room for at least thirty minutes with one or two male employees stationed outside the door. The incident resulted in his arrest for simple battery, after which he was led through the store in handcuffs. Elrod had never been arrested before. The incident caused Elrod and his wife to be late to the Christmas Eve celebration with their family. Elrod testified that he experienced stomach upset, diarrhea, and nervousness in the days following the incident and that he had to see a doctor for medication. Diane Elrod, Elrod's wife testified that he was upset after the incident and during the days following the incident. Ms. Elrod also testified that Elrod now wants to stay home all of the time.
The trial court awarded damages after having the parties brief the issue. Our review of the record reveals no basis for finding that the trial court abused its discretion in awarding general damages in the amount of $3,500.

CONCLUSION
For the reasons discussed herein, we affirm the trial court's judgment at appellant's costs.
AFFIRMED.