DOUCET, Judge.
This is an appeal from a judgment granting worker’s compensation benefits to a man disabled by a mental condition in 1987. The defendants do not dispute the existence of the disability. However, they argue that the plaintiff failed to prove that the disability resulted from an accident as required by La.R.S. 23:1031.
On February 28, 1987, while employed as a field service engineer with Marquette Electronics (Marquette), the plaintiff, Donald Ward, Jr. (Ward), suffered a mental breakdown which rendered him disabled and nonfunctional.
Ward had a history of excelling in highly stressful, technical, skilled occupations. While he was in the Navy, Ward was a technician on a nuclear submarine and worked closely with nuclear weapons systems. In 1983, after a series of jobs in related fields, Ward was hired by Marquette as a field service engineer. His duties included the maintenance and repair of complicated, computerized, medical equipment, valued in the hundreds of thousands of dollars. Any mistake in the maintenance or repair of the equipment could endanger the life of a patient. The testimony at trial established that Ward enjoyed his work and was proud of his ability to do this highly skilled labor under stressful conditions. His job performance was rated excellent by his supervisor. In July 1986, he was promoted to senior field service engineer.
In October 1986, Marquette’s field service engineer for the Baton Rouge district resigned. Ward was assigned to that district as well as his own. Since Marquette had only three service districts in the State, this considerably increased the area covered by Ward. Ward was forced to travel more and work longer hours, leaving home early and often not returning before 8 or 9 p.m. Additionally, he was required to repair and maintain equipment with which he was not fully familiar, and for which he had not been trained.
On February 28, 1987, Ward first had to travel from Alexandria to Baton Rouge on a service call. After completing the necessary repair in Baton Rouge, he traveled to Lafayette on another call. He was then called back to Baton Rouge for service calls at two more hospitals. On the second call, Ward was working on an EKG machine, when a doctor walked up behind him and tapped him on the shoulder. Ward jumped into the EKG machine, cut his hand and arm, and urinated on himself.
Ward finished the job, and called his employer and told him that he could not work anymore. The plaintiff’s wife, Judy Ward, testified that when Ward got home his pants were still wet, he was distraught, and spoke with a stutter although he had never stuttered prior to this incident.
Dr. Robert Moore, a general practitioner, was the first doctor to examine Ward after the incident. He noted that Ward was “distraught, trembling and unable to function.” In his testimony, he stated that he had previously seen Ward for episodes of “spasms” and chest pains for which Ward was taking medication. Dr. Moore testified that he and Ward had not discussed any specific event that may have precipitated his breakdown. Dr. Moore referred Ward to Dr. Ronald Pryer, a clinical psychologist.
Dr. Pryer testified that on the initial visit, Ward was extremely anxious, stuttering, depressed, and frightened. Dr. Pryer gave Ward an MMPI test, the results of which indicated elevated levels of stress, anxiety, and depression. Dr. Pryer noted that Ward stayed home almost all the time, couldn’t go places alone, and feared crowded places. Dr. Pryer testified that Ward has an obsessive-compulsive personality which manifested itself in perfectionism. While this perfectionism helped him to excel in his profession, it also served to increase and magnify the stress felt by the plaintiff. He characterized the plaintiff’s employment as high stress and stated that the stresses on the job had led to Mr. Ward’s problems. Dr. Pryer’s ultimate *1288 opinion was that the precipitating event of a total breakdown and anxiety disorder occurred when Ward was startled by the doctor and jumped into the EKG machine. According to Dr. Pryer, the impact of that event on Ward was devastating. Before the incident, Ward was able to handle the job stresses. Afterwards, he was incapacitated by an anxiety disorder. Apparently, his fear of public places was a manifestation of his fear that the incident at the hospital and its resultant humiliation would repeat itself.
Dr. Pryer sent Ward to Dr. Hugh King, a psychiatrist, for the prescription of a medication plan. When Dr. King first saw Ward on April 2, 1987, he characterized Ward as being in a panic state, non-functional, apprehensive, confused, and stuttering in his speech. Dr. King felt that Ward’s work was a significant factor in his condition. He prescribed anxiety medication to control the problem. Dr. King diagnosed Ward as suffering from agoraphobia, or fear of the workplace and open places. He stated that in this type of disorder, the stress tends to build over time until some event triggers an “acute decom-pensation.” Ward did not relate such an incident to Dr. King. Dr. King, stated that he did not go into this with Ward since he had previously discussed Ward’s condition with Dr. Pryer.
At the time of the trial, Ward had been under the primary care of Dr. Pryer and the periodic care of Dr. King for about three years. Testimony from both indicated that Ward had improved significantly. Ward was enrolled in a Vo-tech program learning a new trade. The severity of his anxiety disorder had declined. Ward was at that time expected to be employable at a future date.
After trial on the merits, the judge found that the plaintiff’s condition was compensa-ble under the Louisiana Workers Compensation statute. He rendered judgment in favor of the plaintiff, finding him to be temporarily, totally disabled and ordering weekly benefits of $261.00.
The defendant appeals, arguing first that the injury did not result from an accident so as to be compensable under the workers compensation law. The defendants also argue that the trial judge erred in not allowing Ward’s deposition to be introduced into evidence.
ACCIDENT
La.R.S. 23:1031 [1], states that an employee shall be paid compensation when he “receives personal injury by accident arising out of and in the course of his employment.” La.R.S. 23:1021(1)[2], effective at the time this action was filed, states that:
“ ‘Accident’ means an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.”
Injury is defined by La.R.S. 23:1021(7) to include:
“... only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.”
The Louisiana Supreme Court is Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138 (La.1989) dealt with the issue of:
“... whether a mental injury induced by mental stress is compensable when it is caused by a significant employment incident and is not accompanied by any apparent signs of physical trauma.”
Sparks, supra at p. 139. The Court decided that it was stating that:
“... In summary, a mental injury induced by mental stress that is caused by an unexpected and sudden or violent employment-related event may be compen-sable under the Act.”
Sparks, supra at p. 147.
The Court in Sparks found that a work-related accident had occurred where the *1289 plaintiff became disabled as a result of a mental condition which was precipitated by a confrontation in which an employee under her supervision threatened her. This incident was considered the event which caused the injury in spite of the fact that she had experienced a campaign of harassment and threatening behavior prior to the incident which triggered her disability.
As in Sparks, the defendant here argues that the plaintiff failed to show that a “single, unforeseen and catastrophic event” occurred which gave rise to the breakdown. Defendant argues that the evidence shows that Ward’s breakdown occurred as a result of the buildup of stress over a period of months.
“Whether a work-related accident occurred is a question of fact to be decided by the trial judge. Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975) and Prim v. City of Shreveport, 297 So.2d 421 (La.1974).”
Deville v. Port Pipe Terminal of La., Inc., 419 So.2d 16, 18 (La.App. 3rd Cir.1982), writ denied, 422 So.2d 424 (La.1982). As a result, this finding should not be disturbed on appeal unless it is manifestly erroneous or unsupported by the evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court’s conclusion that the incident of February 28, 1987 was an “accident” under the act is well supported by the evidence. Dr. Pryer’s testimony makes it clear that the disability was triggered by this incident. The incident was both unexpected and sudden. The defendant introduced no evidence to the contrary. Additionally, considering the La. Supreme Court ruling on the quite similar situation in Sparks, we cannot find the conclusion to be manifestly erroneous.
DEPOSITION
The defendants also argue that the trial judge erred in failing to allow the admission of Ward’s deposition into evidence.
The circumstances under which a deposition may be admitted into evidence at a trial or hearing are outlined in La.C.C.P. art. 1450:
“A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness. >
(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Article 1442 or 1448 to testify on behalf of a public or private corporation, partnership, or association, or governmental agency which is a party may be used by an adverse party for any purpose.
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable;
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which, in fairness, should be considered with the part introduced, and any party may introduce any other parts.
B. Substitution of parties does not affect the right to use depositions previously taken; and, when an action in any *1290 court of this state, or the United States or of any state has been dismissed and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.”
Under this article, the only purpose for which Ward’s deposition could properly be admitted is to impeach Ward’s testimony. Examination of the record reveals that the defendant failed to lay a foundation for such a use of the deposition. Consequently, the trial judge correctly refused to allow its admission into evidence.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.

. This statute was amended in 1989 however, the pertinent language was retained.

. This statute was amended in 1989 however, the law is unchanged.