|, PEATROSS, J.
Plaintiff, Brenda C. Prine, individually and on behalf of the estate of her husband, Eric Prine, appeals a jury’s determination that Plaintiff did not prove by a preponderance of the evidence that a bull owned by decedent’s brother, Defendant, Reggie Prine, was the cause of the death of Eric Prine. For the reasons stated, herein, we affirm.
FACTS and PROCEDURAL HISTORY
On August 19, 1997, Eric Prine was apparently injured by a bull or cow in a pasture area where approximately 25 cattle were grazing.[1] There were no witnesses to the accident and the injuries resulted in Eric Prine’s death.
Eric Prine left his home at 5:45 p.m. on the evening of August 19,1997, to feed and water the above-described cattle. When Eric Prine did not return home by 8:00 p.m. that night, Plaintiff became concerned and called Reggie Prine, who went to the pasture and found his brother dead.
The coroner’s report noted that, at the time Eric Prine was found, he had bled from both ears, had lacerations on both sides of his head and had numerous bruises and scrapes on his upper torso. An autopsy was not performed and the death certificate stated the cause of death as “due to major multiple traumatic injuries due to attack by a bull.”
There was conflicting testimony at trial concerning the demeanor and disposition of the bull in question. Several people in the community testified that the bull was known to be mean and dangerous. There was also testimony, however, about the bull’s docile nature.
Herman Anderson, a neighbor of Reggie Prine, testified that, on the morning following the accident, he saw what appeared to be dried blood on the left |?side of the bull’s head. He also stated, however, that the bull did not act unusual that morning and was easily roped.
It is Plaintiffs contention that this was the bull that killed Eric Prine while he was within the pasture gates at the watering trough. She filed suit on September 29, 1997, against Defendants, Reggie Prine, and his insurers, St. Paul Fire and Marine Insurance Company (“St. Paul”) and Economy Fire and Casualty Insurance Company (“Economy”), alleging that the bull be *833 longing to Reggie Prine killed Eric Prine and that Reggie Prine had knowledge of the bull’s dangerous propensity. Following a jury trial, judgment was rendered in favor of Defendants, Reggie Prine, St. Paul and Economy. Plaintiff appeals.
DISCUSSION
Plaintiff asserts as her sole assignment of error the jury’s failure to find that the bull belonging to Reggie Prine was responsible for the death of Eric Prine. La. C.C. art. 2321 governs actions against the owner of an animal for the damage which it has caused and states as follows:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal’s behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly hable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person’s provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
In order to prove an owner is liable under the above statute, a plaintiff must first show that the animal which caused the damage belonged to the defendant. Boyer v. Seal, 534 So.2d 30 (La.App. 4th Cir.1988). Liability arises solely from the legal relationship between the owner and the animal. Rozell v. Louisiana Animal Breeders Cooperative, 434 So.2d 404 (La.1983). In the case sub judice, |?,there is no issue as to the ownership of the bull. Instead, the issue is whether or not the bull owned by Reggie Prine is, more probably than not, the animal that killed Eric Prine. In answer to the first question on the Jury Questions, “Do you find by a preponderance of the evidence that the bull belonging to the defendant, Reggie Prine, caused the death of Eric Prine?” five of the six jurors answered “no.” We find the jury did not err in reaching this conclusion.
The factfinders’ conclusions may not be set aside on appeal in the absence of manifest error or unless clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Smith v. Brookshire Grocery Co., 30,184 (La.App.2d Cir.1/23/98), 706 So.2d 643. Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable factual basis exists for the jury’s finding, and (2) the appellate court determines that the record establishes the finding is clearly wrong or manifestly erroneous. Id. Where there are two permissible views of the evidence, the fact-finders’ choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Elrod v. Wal-Mart Stores, Inc., 31,852 (La.App.2d Cir.5/7/99), 737 So.2d 208.
Once Reggie Prine’s bull matured beyond 4-H show age, he was grazed in a pasture owned by Merle Kennedy. Both Mr. Kennedy and Brenda Prine testified that they were afraid of the bull. They further testified that the bull would bellow and paw the ground when people were nearby. Mr. Kennedy testified that he was a party to a conversation with the Prine brothers in which one of them stated that he believed they should move the bull from Mr. Kennedy’s pasture before it hurt Mr. Kennedy.[2] Eric Prine later moved the bull for breeding purposes to the pasture where the accident occurred.
|4To the contrary, however, R.L. Frazier, the Associate County Agent with Louisiana State University Agriculture Center and 4-H Association, and Paul McCoy, the *834 current owner of the bull, each testified that the bull was quite docile. Mr. Frazier stated he had witnessed Elliot Prine, Reggie Prine’s son, show the bull on at least ten occasions over a period of approximately one and one-half years. Elliot was between the ages of 9 and 11 during that time. Mr. Frazier described the bull as “just as gentle a(sic) old dog as you’ll ever want to see out there. Probably one of the better natured bulls I’ve ever seen around.... ” He further testified that it was uncharacteristic of the bull to be violent. He stated that he lived near the Prines and passed their home on his way home from work. He often saw Elliot Prine in his unfenced front yard working with the bull.
Mr. McCoy testified that, after he purchased the bull, he kept it in a large pen near his home for about three days in order to observe its demeanor before putting it out in the pasture with his cattle. He described the bull as docile and stated he had no reluctance in getting close to it. Both he and Mr. Frazier had been around cattle since their childhood and testified that a bull’s disposition is constant and not likely to change.
Defendants presented photographs and a video tape depicting the bull with various people. There were several photographs of Elliot Prine showing the bull and of Mr. McCoy and others petting and handling the bull. The video tape and two of the photographs show Mr. McCoy standing next to the bull in a confining pen and holding the bull’s ears in such a manner as to reveal the registration markings on its ears confirming the identity of the bull. In neither the still photographs nor the video tape did the bull exhibit any violent behavior.
Herman Anderson testified that, at the request of Reggie Prine, he went to the pasture on the morning following the accident and roped the bull to secure it for later pickup by local sale barn personnel. He testified that the bull came to him | .^without difficulty that morning, simply by virtue of his having poured feed on the ground, and that he effortlessly slipped the rope around the bull’s head as the bull was feeding. Mr. Anderson stated that the bull showed no signs of agitation, but that he saw what he thought to be dried blood on the left side of the bull’s head. He did not cheek the bull closely, however, to determine if the substance was dried blood nor did he check for the same substance on any of the other cattle.
Mike Kovac, a close friend of Reggie Prine and long time cattleman, testified on behalf of Plaintiff. He stated unequivocally that cattle are big animals and they can hurt you even if they are not bad-tempered. Reggie Prine testified that the watering trough near which his brother was found was dry and it appeared the pump was broken. He stated that there was no way to tell how long the cattle in that pasture had been without water or how that, coupled with the heat of August, might affect their behavior.
In light of the conflicting testimony and evidence, we cannot say that the jury committed manifest error or was clearly wrong in finding that Plaintiff did not prove by a preponderance of- the evidence that the bull owned by Reggie Prine was the cause of the death of his brother, Eric Prine. We, therefore, find no merit to Plaintiffs assignment of error.
In both oral argument and in a supplemental appellate brief, Plaintiff raised as another possible error the trial court’s failure to apply La. R.S. 33:1563 in interpreting the language of Eric Prine’s death certificate and its relation to the case sub judice. La. R.S. 33:1563(E)(3):
The cause of death, the manner or mode in which the death occurred, as rendered by the coroner and incorporated in the death certificate filed with the division of vital records of the Department of Health and Human Resources, shall be the legally accepted cause of death, unless the court of the parish in which the death occurred, after a hear *835 ing, directs the coroner to change his decision as to the cause, manner, or mode of death.
| ^Issues not raised in a petition or at trial are not to be considered on appeal. Bailey v. Parish of Caddo, 30,822 (La.App.2d Cir.8/19/98), 716 So.2d 523. We will, nevertheless, briefly address the application of the statute to the case sub judice. Plaintiff argues that, since the death certificate states, “Attacked by a bull,” and since the bull owned by Reggie Prine was the only bull in the pasture, it follows that the bull in question was the legal cause of Eric Prine’s death. We do not adopt such a literal reading of the statute. La. R.S. 33:1563(E)(3) does not proscribe findings regarding the cause of the designated cause of death. Alexander v. State, Dept. of Health & Hospitals, 94-714 (La.App. 3d Cir.12/7/94), 648 So.2d 11. Furthermore, according to the jurisprudence, a death certificate, including a certificate from the coroner’s office or a report of the coroner’s jury, is competent proof only of death itself; it is not proof of the cause of death and is inadmissible for purposes of showing the cause of a death. Alexander, supra; Bailey v. State, 623 So.2d 704 (La.App. 4th Cir.1993); Franklin v. Old Colony Insurance Co., 150 So.2d 892 (La.App. 4th Cir.1963), writ denied, 152 So.2d 564 (La.1963). There is, therefore, no statutory impediment for a finding that the bull owned by Reggie Prine was not proven to be, more probably than not, the cause of Eric Prine’s death.
CONCLUSION
For the foregoing reasons, the verdict of the jury and judgment of the trial court dismissing the suit of Plaintiff, Brenda Prine, is hereby affirmed. Costs associated with this appeal are assessed to Plaintiff, Brenda Prine.
AFFIRMED.

. The Prine brothers apparently owned and worked the cattle together. The bull in question, however, was owned solely by Reggie Prine. The bull was in that pasture for breeding purposes with the agreement of both Reggie and Eric Prine.

. Reggie Prine denied ever being a party to such a conversation with his brother.