# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-443

**ARETHA BROWN**

**VERSUS**

**CITY OF LAKE CHARLES**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
DISTRICT 3, NO. 02-08540
HONORABLE CHARLOTTE L. BUSHNELL, JUDGE
\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Glenn B. Gremillion, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

Christopher E. John
P.O. Box 900
Lake Charles, LA  70602-0900
Counsel for Defendant-Appellant
    City of Lake Charles

Mark Zimmerman
4216 Lake Street
Lake Charles, LA  70605
Counsel for Plaintiff-Appellee:
    Aretha Brown

PAINTER, Judge.

Defendant, the City of Lake Charles ("the City"), appeals the judgment of the trial court finding that Aretha Brown sustained a job-related injury, and ordering it to reimburse Plaintiff her out of pocket medical costs, pay medical and indemnity benefits, penalties and attorney's fees. The City appeals asserting that Ms. Brown's workers' compensation claim was based on misrepresentations about the occurrence of the accident and the extent of her injuries. Finding no error, we affirm the judgment of the trial court.

FACTS

On August 15, 2002, Aretha Brown was employed by the City as Director of the Purple Heart Recreation Center. When she arrived at the recreation center that day, she went into the gymnasium. Noting that the floor was wet, she went to turn on the lights by turning on a series of breakers. She alleges that as she did so, she felt a tingling in her fingers and remembers nothing from that moment until she came to at Lake Charles Memorial Hospital.

Ms. Brown was discovered by Lake Charles Police officers who were in the building for training. She was taken by ambulance to Lake Charles Memorial Hospital where she was admitted and underwent evaluation for possible electric shock and back injuries. She was discharged from the hospital four days later. Ms. Brown was referred by her employer or its adjuster to Dr. James Perry, an orthopedist, for complaints of back pain but refused her request for treatment by Dr. Dale Bernauer, "pending the completion of our investigation." Ms. Brown paid out of her own pocket for treatment by Drs. Bernauer, Lew and Wetherwax. She filed a Disputed Claim for Compensation on November 14, 2002, alleging, among other

1

things, that disputes existed with regard to choice of physician and payment of medical and indemnity benefits. The matter was sent to mediation. However, according to the mediation report, "the parties were not able to resolve this matter at this time." Temporary total disability benefits were paid from the date of the injury until January 31, 2003, then discontinued, allegedly based on the medical reports from Dr. Perry. The City filed an answer to the disputed claim on February 11, 2003, asserting as a defense that the claimant made material misrepresentations about her condition in order to get benefits and reserving the right to seek reimbursement.

After a hearing on May 13, 2004, the trial court appointed a psychologist "to evaluate" Ms. Brown and determine "whether there is a psychological overlay from this work accident."

On December 17, 2004, having received the report of Dr. Charles Montlezun, a licenced psychologist, the trial court rendered judgment finding that the claimant suffered a compensable work-related injury on August 15, 2002, that she has been disabled since that time and is, therefore, entitled to weekly indemnity benefits with a credit for benefits paid, medical benefits, reimbursement of out of pocket expenses related to the claim, a penalty of $2000.00 and an attorney's fee of $3000.00 for failure to thoroughly investigate the claim. The court further ordered that the MMPI be administered to the claimant by a licensed psychologist.

DISCUSSION

Benefits

The City appeals this judgment arguing that the trial court's ruling should be reversed because the evidence supports the conclusion that the claimant was faking

2

or exaggerating her injuries. The City further asserts that judgment should be rendered ordering that the claimant repay the benefits paid.

The trial court's determination that Ms. Brown incurred a work related injury is factual and may not be disturbed in the absence of manifest error. *Ward v. Commercial Union Ins. Co.*, 591 So.2d 1286, (La.App. 3 Cir. 1991). The trial court gave its reasons for its determination, as follows:

> After reviewing the record, considering the law and the evidence, the court[] finds that the claimant has established the occurrence of a work-related accident by a preponderance of the evidence. While the nature and extent of claimant's disability is at issue, the fact is that claimant was denied her right to a choice of physician. The police officer thought she was feigning and he immediately told the E.M.T. that the claimant was faking before the E.M.T. could establish an independent impression. The adjuster sought the opinion of Dr. Perry and immediately asked Dr. Perry to look for symptom magnification. A thorough investigation was never really conducted and defendants essentially decided to deny the claim from the outset.

From these reasons it can be seen that the trial court made its determination based on its evaluation of the credibility of the witnesses.

> Factual findings in a workers' compensation case are subject to the manifest error standard of review. *Banks v. Industrial Roofing & Sheet Metal Works*, 96-2840 (La.07/01/97), 696 So.2d 551. This court does not decide whether the findings are right or wrong, but whether they are reasonable. The fact finder's choice between two permissible views on the evidence cannot be clearly wrong. *Id.* Even though this court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Stobart v. State, though DOTD*, 617 So.2d 880 (La.1993) *citing Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, this court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 883.

*Whitmore v. Louisiana Hydro-Electric*, 04-1300, pp. 3-4 (La.App. 3 Cir. 2/2/05), 893 So.2d 961, 964. *See also Whaley v. Christus St. Patrick Hosp.*, 04-1296 (La.App. 3 Cir. 2/2/05), 893 So.2d 915, *writ denied*, 05-531 (La. 4/29/05), 901 So.2d 1070.

Therefore, we must discover whether the trial court's determination regarding Ms. Brown's entitlement to benefits is reasonable and supported by the record as a whole. We note that the City makes much of the fact that Ms. Brown had no signs of electrical burns or other electric shock injury. However, Ms. Brown's claim is for back injuries which she alleges resulted from falling to the gymnasium floor. As has been stated, Ms. Brown testified that she remembered nothing from the time she touched the breakers until she woke up in the hospital.

Lieutenant Frank Adams, a Lake Charles City Police Officer, testified that he is trained in CPR and has been a certified Emergency Medical Technician since 1984. He further testified that he and other Lake Charles Police Officers were at the Purple Heart Recreation Center on August 15, 2002 for two weeks of defensive tactics training. Another officer found Ms. Brown on the floor of the gymnasium and alerted Lt. Adams, who went to render assistance. He found her lying on the floor under the breaker box. He asserted that he saw nothing indicative of an electric shock injury, having found no entry or exit burn marks on Ms. Brown. He stated that, when he found her, she was not unconscious and told him she had been shocked. It was his testimony that she then became unresponsive and appeared to be semi-conscious. He testified that he did a variety of tests to determine that she was conscious and that she reacted in way which suggested that she was pretending to be unconscious. He admitted that when the ambulance arrived, but prior to the paramedic's examination of Ms. Brown, he informed them that he suspected that she was feigning injury.

4

The ambulance attendant testified in deposition that he saw no visible sign of injury when he examined Ms. Brown. He stated that she responded to his questions and appeared to understand him. However, he admitted it was possible she was disoriented.

Ms. Lori Schmitz, an adjuster with Littleton Claim Service, third-party administrator for the City, testified that she handled Ms. Brown's compensation claim. She admitted that it was confirmed that the electrical box was leaking voltage at the time of the accident. Ms. Schmitz stated that she had refused Ms. Brown's request for authorization to see Dr. Bernauer pending investigation because of inconsistencies in the medical reports. She testified that she felt that the emergency room and EMT reports showed inconsistencies that indicated that Ms. Brown was faking her injury. She admitted that in her letter referring Ms. Brown to Dr. Perry, sent before he had seen the claimant, she asked him to look for symptom magnification. She admitted that the surveillance conducted by the investigator for Littleton did not find anything which would support the City's claim that Ms. Brown was faking an injury. She further admitted that no investigation had been made of Ms. Brown's work history and that she had no evidence of prior compensation or personal injury claims.

Dr. Perry, the employers's choice of physician, reported in his deposition that he felt that Ms. Brown was exaggerating or overstating her symptoms.

The surveillance report reveals no evidence of behavior which would suggest that Ms. Brown was faking her injury. During the surveillance period, she was seldom seen to leave her home and, when she did, she was seen to use a walking stick.

Ms. Brown denied faking or exaggerating her claims of injury. She testified to having filed a compensation claim ten to twelve years previously, when she burned her hand while working in the kitchen of a restaurant. Her testimony and that of her son indicated that she had been an active person prior to the accident, that she was a former college and semi-pro basketball player, that she enjoyed coaching her son, and continued to play recreational ball until the injury to her back reduced her to a sedentary lifestyle.

Drs. Bernauer and Witherwax signed notices that Ms. Brown was unable to return to work. Dr. Bernauer referred Ms. Brown to Dr. Christopher Lew, a pain management specialist. He prescribed medication for her pain. According to his report, he diagnosed lumbar radiculopathy, neuropathic pain in her right leg and depression and stated that the conditions were related to the work injury of August 15, 2002. His reports do not suggest that Ms. Brown is faking, exaggerating or misstating her symptoms.

On order of the court, Ms. Brown was examined by Dr. Montlezun who reported to the court, opining that she was not clearly malingering, but stating that further tests could come closer to determining whether she was exaggerating. He found some inconsistencies in her testing data, including one instance in which she failed a malingering screener and one in which she passed the same test and felt that her descriptions of the physical and emotional results of the injury were not consistent with the results of the tests he administered. However, Dr. Montlezun noted in his report that:

> An additional inconsistency in this situation is from the fact that we
> have here a lady who was extremely athletically active in competitive
> sports. Importantly, she had found a place of employment which catered
> to this athleticism as well as her reported love of youngsters in the

6

athletic setting. This would appear to be a job that she would want to continue because of the emotional gratification which she claims she derived therefrom. Lastly, we have nothing in her family history or her personal history which suggests anything other than a strong work ethic. As a matter of fact, there is a stated antipathy for malingering behavior and attitude. Corroborating information additionally suggest that there is a genuineness in this lady's complaint in that her son reports a radical change in the home which now exists day and night outside the view of pubic scrutiny. He noted specifically in the interview that in the month's since his mother's injury, he has found himself essentially as the primary preparer of meals, provider of housework labor, and the person responsible for the running of errands and shopping. He notes that his mother's bending and lifting is essentially negligible and that he believes fully and strongly that his mother's complaints are genuine and in no way contrived. He reports that he has repeatedly heard her state that she grieves the loss of the employment which was so emotionally gratifying to her.

Given this evidence, it is clear that there are two permissible views of the evidence, depending on which witnesses are given credence. Therefore, we cannot say that the trial court's findings are unreasonable. Since the trier of facts findings are reasonable in light of the record, we may not reverse. Having so found we need not consider the City's claim for reimbursement of benefits.

Attorney's Fees

Defendant's also assert that the trial court erred in granting penalties and attorney's fees. The trial court stated in its oral reasons for judgment that:

> While the nature and extent of claimant's disability is at issue, the fact is that claimant was denied her right to a choice of physician. The police officer thought she was feigning and he immediately told the E.M.T. that the claimant was faking before the E.M.T. could establish an independent impression. The adjuster sought the opinion of Dr. Perry and immediately asked Dr. Perry to look for symptom magnification. A thorough investigation was never really conducted and defendants essentially decided to deny the claim from the outset.
>
> "To avoid penalties and attorney's fees for the non-payment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits". George v. Guillory, 00-591, page 13 (La.App. 3 Cir. 11/2/00) 776 So.2d 1200, 1209.

7

This court has stated that: "An employer who fails to properly investigate an employee's compensation claim subjects itself to statutory penalties and attorney fees. *Nelson v. Roadway Exp., Inc.*, 588 So.2d 350 (La.1991)." *Rachal v. Good Neighbor Glass, Inc.*, 03-1288, p. 3 (La.App. 3 Cir. 3/3/04), 867 So.2d 129, 132, *writ denied*, 04-0885 (La. 5/21/04), 874 So.2d 175. "Whether an employer should be cast with penalties and attorney's fees is a finding of fact which will not be reversed in the absence of manifest error" *Wiley v. Grand Casino Avoyelles*, 98-1468, p. 12 (La.App. 3 Cir. 4/21/99), 731 So.2d 518, 524 (La. App. 3 Cir. 4/2199). The record supports the trial court's conclusion that the employer failed to seriously investigate Ms. Brown's claim, but rather sought and relied on only that information which supported its foregone conclusion that Ms. Brown was faking injury. Finding no clear error in the trial court's determination, and in light of the authority cited by the trial court, we decline to overturn the trial court's determination that Ms. Brown is entitled to an award of penalties and attorney's fees.

Ms. Brown has answered the appeal asking for increased attorney's fees for work done at trial and on appeal. In light of the amount of work done and the degree of expertise required to pursue this claim on behalf of Ms. Brown, we will increase the award of attorney's fees for work at trial to $5,000.00. Additionally, we award $2,000.00 in attorney's fees for the appeal of this case. *See Daenen v. The Cajun Landing Restaurant*, 04-1193 (La.App. 3 Cir. 4/6/05), 899 So.2d 125.

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendant, the City of Lake Charles.

**AFFIRMED.**