STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-604


CHARLES MCKELVEY, JR.

VERSUS

CITY OF DEQUINCY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 05-05612
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Billy Howard Ezell, Judges.

AFFIRMED.

**Christopher Richard Philipp**
**P. O. Box 2369**
**Lafayette, LA 70502-2369**
**Telephone: (337) 235-9478**
**COUNSEL FOR:**
        **Defendant/Appellant - City of DeQuincy**

**Thomas Allen Filo**
**Cox, Cox, Filo & Camel, L.L.P.**
**723 Broad Street**
**Lake Charles, LA 70601**
**Telephone: (337) 436-6611**
**COUNSEL FOR:**
        **Plaintiff/Appellee - Charles McKelvey, Jr.**

**THIBODEAUX, Chief Judge.**

Defendant, the city of DeQuincy, appeals the Office of Workers' Compensation judgment awarding death benefits to the plaintiff, Tina McKelvey, (Mrs. McKelvey) individually and on behalf of her minor daughter, Misty, as a result of the death of her husband, Charles McKelvey, Jr., due to "probable mixed drug intoxication." The city of DeQuincy also appeals the Office of Workers' Compensation judgment awarding $2,000 in penalties and $6,500 in attorney fees against it and in favor of Mrs. McKelvey because the trial judge concluded that the claim was "not reasonably controverted, nor suitably investigated."

For the following reasons, we affirm the judgment of the Office of Workers' Compensation.

I.

## ISSUES

We shall consider whether:

1.  the trial court erred in determining that Mrs. McKelvey carried her burden of proof by a preponderance of the evidence in showing that Mr. McKelvey's death was attributable to treatment for his work-related accident;

2.  the trial court erred in allowing Mrs. McKelvey to establish Mr. McKelvey's cause of death by using his death certificate; and,

3.  the trial court erred in awarding penalties and attorney fees to Mrs. McKelvey.

II.

## FACTS

Mr. McKelvey suffered an injury at work on September 25, 2000, while

working as a heavy equipment operator for the city of DeQuincy. Thereafter, he developed severe pain in his back and lower extremities. Mr. McKelvey consulted Dr. Clark Gunderson, an orthopedic surgeon. After a complete diagnostic physical examination, which included a lumbar myelogram, a computerized tomography of the lumbar spine (CT), and an electromyogram (EMG), Dr. Gunderson determined that Mr. McKelvey was not suitable for surgery and referred him to Dr. Frank Lopez, a rehabilitation physician.

On July 30, 2001, Dr. Frank Lopez began treating Mr. McKelvey for pain management. Dr. Lopez diagnosed Mr. McKelvey with lower back pain with radiculopathy. To control Mr. McKelvey's back aches, Dr. Lopez devised a treatment plan consisting of prescribed medications such as Zanaflex, Neurotin, Soma, Restorial, OxyContin, and Mepergan Fortis.

In 2004, Dr. Lopez referred Mr. McKelvey back to Dr. Gunderson. Following a thorough physical examination, Dr. Gunderson determined that the x-rays showed degenerative disc disease at every level. Thereupon, Dr. Gunderson concluded that Mr. McKelvey was still not a suitable candidate for surgery. Accordingly, Mr. McKelvey continued his pain management treatment with Dr. Lopez.

On February 9, 2005, Mr. McKelvey was found dead. A toxicology report was issued by the Southwest Institute of Forensic Science in Dallas, Texas. The toxicology report tested negative for alcohol and controlled substances, but indicated that Mr. McKelvey had high levels of ten prescription medications in his system at the time of his death. Based upon the toxicological findings, Mr. McKelvey's death certificate stated his death as caused by "probable mixed drug intoxication."

2

The city's third party administrator, Risk Management, Inc. (RMI), was paying Mr. McKelvey's workers' compensation benefits continuously until his death. However, upon Mr. McKelvey's death, all workers' compensation benefits were terminated based on RMI's determination that since Mr. McKelvey "apparently ingested excessive amounts of medications" the death was not caused by his work-related injury. At trial, Sandy Arst, the claims adjuster for RMI, testified that once RMI learned of Mr. McKelvey's death, further investigations on the claim were suspended.

On July 21, 2005, Mrs. McKelvey filed a death benefit claim. Thereafter Mr. Arst asked Mrs. Carla LaFleur, a medical case manager, to reopen Mr. McKelvey's file and conduct research on the interaction between the drugs Mr. McKelvey was taking at the time of his death. Mrs. LaFleur rendered a report which stated the side effects of each medication taken individually; it did not indicate the side effects of the medications taken collectively. No death benefits were ever paid to Mrs. McKelvey.

III.

**LAW AND DISCUSSION**

**Standard of Review**

In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cencac v. Public Access Water Rights Association*, 02-2660, p. 9 (La. 6/27/03), 851 So.2d 1006, 1023.

> Nevertheless, the issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder's conclusion was a reasonable one

3

> . . . Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.

*Stobart v. State through DOTD*, 617 So.2d 880, 882 (La.1993).

Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Prine v. St. Paul Fire & Marine Ins. Co.*, 749 So.2d 831. The "manifest error" standard of review applies to all factual findings, including sufficiency of the evidence challenges. *Hall v. Folger Coffee, Co.*, 03-1734 (La. 4/14/04), 874 So.2d 90, 99, *citing Nabors Drilling USA v. Davis*, 03-0136 (La. 10/21/03), 857 So.2d 407, 416. Therefore, we will review the record in its entirety to determine if the trial court's findings are reasonable in light of the evidence contained therein.

## A.

**Was the trial court's determination that Mr. McKelvey's death was attributable to treatment for his work-related accident reasonable in light of the record reviewed in its entirety?**

We are posed with the factual question of whether Mrs. McKelvey carried her burden of proof by a preponderance of the evidence in showing that Mr. McKelvey's death was directly attributable to the treatment he received for his work-related injury.

The plaintiff in a death benefits case bears the burden of proving, by a reasonable preponderance of the evidence, that a causal relationship exists between the employment accident and death. *Hammond v. Fidelity & Cas. Co. of New York*, 419 So.2d 829, 831 (La.1982). It is not necessary for the plaintiff to establish the exact cause of the disability or, in this case, the death, but it is necessary for the plaintiff to "demonstrate by a preponderance of proof that the accident [that was]

4

sustained has [a] causal relationship with [the] disability." *Quinones v. U.S. Fidelity and Guar. Co.*, 93-1648 (La. 1/14/94), 630 So.2d 1303, *citing Russell v. Employer's Mutual Liability Insurance Co. of Wisconsin*, 246 La. 1012, 169 So.2d 82, 88 (La.1964).

In this case, there is evidence establishing that Mr. McKelvey was a relatively healthy and strong man with no reported injuries, aches or pains before his work-related injury. Admittedly, there is also evidence showing that Mr. McKelvey sustained three myocondrial infarctions (i.e., heart attacks) in the past, and suffered polycystic kidney disease, an inherited progressive disease. Nevertheless, a distinction between these conditions and his work-related injury can readily be made. Both the polycystic kidney disease and heart diseases are pathological in nature, whereas a back injury is mostly mechanical.

Likewise, there is subjective and objective evidence indicating that after his work-related injury, Mr.McKelvey required permanent medical treatment. The deteriorated physical condition of Mr. McKelvey was clearly evinced by Dr. Lopez's medical records. For instance, during the time Dr. Lopez treated Mr. McKelvey, his pain averaged a visual scale of 6 to 7 on Dr. Lopez's "0 to 10 Pain Intensity Scale." As explained by Dr. Lopez at his deposition, he gives patients this scale in order to give him a rough estimate of what they perceive their level of pain is. The extent of Mr. McKelvey's injury as well as the intensity of the pain were also objectively confirmed by Dr. Lopez's office notes dated November 26, 2002, where Dr. Lopez stated that Mr. McKelvey "will need back treatment for the rest of his life due to his condition."

5

**Plaintiff's Evidence Establishing Causation**

Mrs. McKelvey introduced the toxicology report performed on Mr. McKelvey, which stated that at the time of his death, he had not ingested either alcohol or controlled substances, but rather high amounts of prescription medications. In addition to the toxicological findings, Mrs. McKelvey introduced Mr. McKelvey's death certificate wherein his cause of death is stated as "probable mixed drug intoxication." Finally, Mrs. McKelvey introduced the pharmacy records of the prescription medications Mr. McKelvey ingested during the year leading up to his death. According to Mrs. McKelvey, these records were introduced into evidence to confirm the repeated and continued use of the medications found in Mr. McKelvey's system at the time of his death. Thus, in light of the evidence taken collectively, it persuasively indicates that there is a reasonable probability that the death of Mr. McKelvey and his work-related injury were causally related.

**Defendant's Rebuttal Evidence and Allegations**

DeQuincy contends that Mr. McKelvey's continued misuse and abuse of prescribed medications, as opposed to an adverse interaction between them, caused his death, thus breaching, *ipso facto*, the chain of causation between his work-related injury and subsequent death. This assertion, albeit ingenious, is weakly supported by the evidence and is somewhat tenuous. Accordingly, we disagree.

First, in order to establish the misuse and abuse theory, DeQuincy introduced into evidence records of prescription medications from different pharmacies. It alleges that Mr. McKelvey routinely purchased prescription medications from these pharmacies, thereby proving Mr. McKelvey's misuse and abuse of prescription medications. In addition, DeQuincy asserts Dr. Lopez's deposition testimony suggests that it was *very possible* that Mr. McKelvey was

diverting these drugs. This assertion is merely guesswork. Such speculation is insufficient to rebut Mrs. McKelvey's direct evidence.

Second, the fact that Mr. McKelvey may have possibly misused or abused his prescription medications in the *past* is moot. The toxicology report makes it evident that at the time of his death, Mr. McKelvey tested positive for six of the medications Dr. Lopez was prescribing him for his pain management treatment. Notwithstanding this finding of fact, DeQuincy contends that Dr. Lopez discharged Mr. McKelvey as a patient after his last visit on February 1, 2005, allegedly because Mr. McKelvey was misusing his medications, and that was a violation of his pain management contract with Dr. Lopez. But the reality is that, on February 1, 2005, Dr. Lopez wrote Mr. McKelvey his prescriptions for one more month. Then, eight days later, on February 9, 2005, Mr. McKelvey was found dead. Moreover, the toxicological findings revealed that Mr. McKelvey had not consumed drugs nor alcohol, but rather that he had ingested ten prescription medications, six of which were compatible with those prescribed for his work-related injury.

Finally, we reject the defendant's allegation that Mr. McKelvey's "chronic" abuse of his prescribed medications, *ipso facto*, breached the chain of causation between the on the job accident and his following death.

In *Dean v. K-Mart Corp.*, 97-2850 (La.App. 4 Cir. 4 7/29/98), 720 So.2d 349, *writ denied,* 98-2314 (La. 11/13/98), 731 So.2d 265, the defendant advanced the proposition that, "if the [deceased] died because he took more than the prescribed amount of medication, as opposed to dying from a drug interaction, then that overuse of medication would, *ipso facto*, break the chain of causation between the [decedent's] work related accident and his subsequent death." *Id*. In rejecting this assertion, the court explained:

7

> We can see that there might be cases in which the abuse of prescription medication, particularly for blatantly recreational use, went so far that it could not be considered to have been caused by the work related injury that led to the prescription of the medication. But, we also can see that, in the context of long-term use of addictive prescriptive prescription medications for chronic pain, some use of the medications in excess of the prescribed amounts is fairly considered to have been caused by the work related injury which led to the prescription of the medication.

*Id*. at 353.

Similarly, in this case, Mr. McKelvey needed permanent medical treatment. However, because Mr. McKelvey was not suitable for surgery, his permanent medical treatment consisted of the long-term use of highly addictive prescription medications. Thus, it was foreseeable that a dependence upon these medications may develop. In fact, Mr. McKelvey was prescribed methadone precisely to try to get him off the Lorcets, a highly addictive medication, as he had developed a reliance on it. This dependence as well as the possible use of medications in excess "is fairly considered to have been caused by the work related injury which led to the prescription of the medications [in the first place]." *Dean*, 720 So.2d 349, 353.

**B.**

**Did the trial court err in allowing the plaintiff to establish the decedent's cause of death by use of the decedent's death certificate?**

It is settled law that "a death certificate is proof only of the death itself, not proof of the cause of death, and it is inadmissible for the purpose of showing cause of death." *Walton v. Normandy Villege Homes Association, Inc.,* 475 So.2d 320 (La.1985); *Alexander v. State of Louisiana, Department of Health & Hospitals*, 94-714, 648 So.2d 11, (La.App. 3 Cir. 12/7/94), *citing Bailey v. State of Louisiana*,

623 So.2d 704, 706 (La.App. 4 Cir. 1993); *Prine v. St. Paul Fire and Marine Insurance Co.*, 32-559, 749 So.2d 831, (La.App. 2 Cir. 12/8/99), *writ denied*, 00-0032 (La. 2/18/00), 754 So.2d 975.

The Defendant argues that Mrs. McKelvey unsuccessfully established Mr. McKelvey's cause of death by failing to perform an autopsy report, and by relying solely on the his death certificate. We disagree. "Although La. C.Cr.P. art. 105 provides that an autopsy report is competent evidence to establish the fact of and cause of death, it was never intended to preclude other competent evidence." *See, State v. Winzer,* 354 So.2d 533 (La.1978); *State v. Trahan*, 543 So.2d 984 (La.App. 3 Cir. 1989), *rev'd on other grounds*, 551 So.2d 1303 (La.1989); *State v. Outley*, 629 So.2d 1243 (La.App. 2 Cir. 1993), *writ denied*, 94-410 (La. 5/20/94). By analogy, we can extrapolate this principle of law into civil matters. Indeed, the adoption of this rule will allow individuals who lack the financial means to afford an autopsy report to, nonetheless, establish the cause of death through the use of competent evidence such as a toxicological report. Accordingly, as long as the cause of death is proven by any competent evidence, the cause of death will be deemed established.

In this case, Mrs. McKelvey did not exclusively rely on Mr. McKelvey's death certificate to establish the cause of his death. She presented the toxicology report into evidence precisely to establish Mr. McKelvey's cause of death. We agree with Mrs. McKelvey's assertion that the death certificate was introduced into the record to support the toxicology report, namely that Mr. McKelvey's death was caused by "probable mixed drug intoxication."

Moreover, it is noteworthy to mention the fact that DeQuincy neither objected to the introduction of the toxicology report into evidence, nor controverted plaintiff's allegation by rebutting the report with its own toxicological findings. It

argues that since Mrs. McKelvey did not perform an autopsy on Mr. McKelvey, nor hire a toxicology expert, DeQuincy did not have to rebut any such evidence Mrs. McKelvey may have introduced at trial. We disagree. A party denying the existence of a causal relationship between the work injury and the employee's disability or death assumes both the burden of producing the evidence and the burden of persuasion on the issue once the disabled employee establishes the presumption of causal relationship.

Consequently, we hold that the toxicological report constituted competent evidence. Furthermore, in view of the fact that DeQuincy failed to challenge any of the evidence introduced by Mrs. McKelvey at trial, the trial court did not err in finding that the decedent's cause of death was conclusively established by the findings set forth in the toxicology report.

## C.

### Did the trial court err by awarding penalties and attorney fees to Mrs. McKelvey?

It is settled law that the standard of review by an appellate court of the workers' compensation judge's imposition of penalties and attorney fees on an employer is that of manifest error. *Walter Homes, Inc. v. Guilbeau*, 05-1473 (La.App. 3 Cir. 6/21/06), 934 So.2d 239. "Whether an employer should be cast with penalties and attorney's fees is a finding of fact which will not be reversed in the absence of manifest error." *Wiley v. Grand Casino Avoyelles,* 98-1468 (La.App. 3 Cir. 4/21/99), 731 So.2d 518, 524, *writ denied*, 99-2032 (La. 11/5/99), 750 So.2d 180. In order to avoid penalties and attorney's fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits. *Brown v. City of Lake Charles,* 05-443 (La.App.

3 Cir. 11/2/05), 916 So.2d 482 (citations omitted). With regards to the amount of the attorney fees, some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee or beneficiaries, and the amount of time the attorney devoted to the case. *Ardoin v. Kipling Korner Grocery*, 02-1372 (La.App. 3 Cir. 3/5/03), 839 So.2d 1167, 1168-69.

There is overwhelming evidence in the record supporting the trial court's conclusion that DeQuincy failed to properly investigate Mrs. McKelvey's death benefit claim. At trial, Mr. Arst, RMI's claim adjuster, admitted that when RMI learned of Mr. McKelvey's death, workers' compensation benefits ceased without further investigating his cause of death. Apparently, RMI concluded that Mr. McKelvey died as a result of an overdose. According to Mr. Arst, this conclusion was drawn upon the fact that the death certificate indicated that Mr. McKelvey "apparently ingested excessive amounts of medications." The fact that RMI may have thought that Mr. McKelvey's death was caused by a presumed overdose does not relieve it from its ongoing duty to properly and timely investigate any claim. Upon RMI's knowledge of Mr. McKelvey's death, it had a duty to immediately inquire further into the cause of Mr. McKelvey's death to determine the actual cause of death, instead of drawing conclusions based on bare assumptions. It took RMI six months to reopen Mr. McKelvey's file, and it did so only as a result of Mrs. McKelvey's death benefit claim.

Mrs. McKelvey has requested additional attorney fees for the work incurred as a result of this appeal. An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such

an increase. *Pitcher v. Hydro-Kem Services, Inc.*, 551 So.2d 736 (La.App. 1 Cir. 1989), *writ denied*, 553 So.2d 466 (La.1989). A review of the additional work needed by this appeal shows that an increase in the award of attorney fees is reasonable and warranted. Accordingly, we award Mrs. McKelvey an additional $3,000 for the expenses incurred as a result of this appeal. *Poirrier v. Otis Engineering Corp.*, 602 So.2d 207 (La.App. 3 Cir. 1992).

IV.

## CONCLUSION

In view of the record in its entirety, Mrs. McKelvey carried her burden of proof by a preponderance of the evidence, and successfully proved that the deleterious effect of the combined ingestion of medications caused her husband's death. Accordingly, we hold that the trial court's judgment was reasonable in light of the evidence and was neither clearly wrong not manifestly erroneous.

All costs are assessed to the appellant, City of Dequincy.

**AFFIRMED.**